### KLEINHANS et al. v. JONES et ux.

#### (Circuit Court of Appeals, Sixth Circuit. June 10, 1895.)

#### No. 274.

CONTRACTS—ASSENT.

Complainants on October 2, 1893, communicated in writing to one P., who was authorized by defendant to receive and transmit propositions for the purchase of certain real property owned by defendant, and forward his answers thereto, an offer for the purchase of such property. The terms of the offer were to pay $120,000 for the property,—$10,000 cash, and the balance in annual installments of $11,000,—the buyers agreeing to take up the notes in five years, if money could be gotten at 6 per cent.; to pay taxes for 1894; to pay interest semiannually; to insure for $25,000; to improve the property immediately, and that if any note or interest remained unpaid for 30 days the whole should be due; possession to be given in 60 days, and commission paid by defendant. P. at once sent a telegram to defendant, purporting to communicate this offer, and stating that the proposed buyers would pay $120,000 for the property,—$10,000 down, the balance in 10 notes, payable annually, with 6 per cent. semiannual interest, and the privilege of paying all the notes on or before five years; that they agreed, if money was easy, to pay all the notes, if desired, in five years; to pay the taxes of 1894; to improve at once, and insure to secure defendant. No answer having been received from defendant, complainants on October 10th submitted to P. another offer in writing, in which they agreed to pay $120,000,—$10,000 in cash, the balance in 10 annual payments of $11,000 each, payable on or before maturity, to be secured by lien, with semiannual interest at 6 per cent., the whole to be due if any note remained unpaid for 60 days; also to insure the property for $20,000, and pay the taxes of 1894; defendant to pay commission, and give a good title, with general warranty. On October 11th, and before the last-mentioned offer was communicated to him, defendant telegraphed P. that he would accept the offer in P.'s telegram of October 2d, if properly secured on the property. Thereupon P. indorsed an acceptance on complainants' offer of October 10th, attaching defendant's telegram thereto, and receipted for a partial payment from complainants. *Held*, that there was no meeting of the minds of the parties as to the terms of a contract.

Appeal from the Circuit Court of the United States for the District of Kentucky.

This was a suit by Horace Kleinhans and D. G. Simonson against Samuel H. Jones and Elizabeth Dunbar Jones for the specific per-

formance of a contract. The circuit court dismissed the bill. Complainants appeal. Affirmed.

This case was originally brought in the chancery division of the Jefferson circuit court, in Kentucky, by petition. Subsequently the defendants, upon filing their proper petition and bond, procured the removal of the case into the circuit court of the United States for the district of Kentucky. In the latter court the complainants reformed their pleadings, and converted their petition into a bill in equity. The object of the suit was to obtain a decree to compel the specific performance of a contract for the sale of a lot and the building thereon in the city of Louisville known as the "Mozart Hall Property," of which, at the time of the making of the alleged contract, the defendant Samuel H. Jones was the owner; the other defendant named in the pleadings (Elizabeth Dunbar Jones) being his wife. The complainants were copartners engaged in business in Louisville under the firm name of Kleinhans & Simonson, and were citizens of Kentucky. The defendants were citizens of the state of Pennsylvania. One Curran Cope, a resident of Louisville, had for some time previously acted as the local agent of the defendants in the care and management of the Mozart Hall property. The defendants, having it in contemplation to make a sale of this property, had authorized Pope to receive, and communicate to them, any offer that might be made by an intending purchaser, and to receive from the defendants, and communicate to such party, the response which they might think proper to make to such offer. At the time of the negotiations which are alleged to have resulted in the contract upon the basis of which the suit is brought, a firm by the name of Crutcher & Stark were in the occupation of the building. The supposed contract upon which the complainants rely was made by correspondence,—by letter and telegram. The bill sets out the correspondence from which the contract is claimed to have resulted, and prays for a specific performance thereof. The substance of the answer of the defendants is that no contract was established by the correspondence set out by the complainants. Upon this issue the controversy mainly depends. The complainants, through John A. Stratton & Co., their agents, on the 2d day of October, 1893, submitted an offer to Pope for the Mozart Hall property, to be communicated by him to his principals. This offer was in the words and figures following:

"Will pay......................................................$120,000
  Cash .....................................................$10,000
  1 year, on or before........................................ 11,000
  2 years, on or before....................................... 11,000
  3 years, on or before....................................... 11,000
  4 years, on or before....................................... 11,000
  5 years, on or before....................................... 11,000
  6 years, on or before....................................... 11,000
  7 years, on or before....................................... 11,000
  8 years, on or before....................................... 11,000
  9 years, on or before....................................... 11,000
10 years, on or before....................................... 11,000

"Will take up notes at the end of five years, if money can be gotten at six per cent. Will pay taxes for 1894. Will pay interest semiannually. Will insure for at least $25,000 for benefit of deferred payments. Will improve immediately. They want immediate possession within sixty days after deed is made. If any note or installment of interest is not paid within thirty days after maturity, all are due. This contemplates Mr. Jones paying comm.
    "[Signed]                                    Kleinhans & Simonson."

On the same day Mr. Pope assumed to communicate this offer to Mr. Jones by the following telegram:

"Bona fide new party will give one hundred and twenty thousand for Mozart. Ten thousand cash, balance ten notes payable annually, with six per cent. interest payable semiannually. Privilege of paying all notes on or before five years. Agree, if money is easy, to pay all notes, if desired, at the end of five years. Will pay ninety-four taxes. Will improve at once, and in-

sure to secure you. Possession to be given sixty days from date. This is the top notch, and parties better than gold. It is a paying, safe, solid investment. Answer at once.

　　　"[Signed]　　　　　　　　　　　　　　　　　　　　Curran Pope."

Jones replied, postponing any definite answer to the proposition until he should get some further information and advice from another party in reference to the subject. No definite reply to the offer having been received by Pope from Jones, the complainants on the 10th day of October, 1893, submitted another form of offer for the property, which was in the words and figures following:

　　　　　　　　　　　　　　　　　　　　"Louisville, Ky., Oct. 10, 1893.

"John A. Stratton & Co., Agents: You are authorized to offer $120,000, payable $10,000 cash, balance in ten equal annual payments of $11,000 each, payable on or before maturity, to be secured by lien, and the premises to be insured for at least $20,000 for benefit of deferred payments, and notes bearing interest at the rate of 6 per cent., payable semiannually; and should any of the notes become due, and is unpaid, and remain unpaid for the space of sixty days, the whole amount, at the option of holder, to be deemed due. Possession to be given within thirty days after date of deed. We pay taxes for 1894, and seller to pay your commission for selling the property belonging to S. H. Jones, fronting 99 feet on east side of Fourth street, by a depth of 83 feet on Jefferson street, the south line of which binds on Jefferson street. Mr. Jones to make us a good title, and give general warranty deed, free of all incumbrances.

　　　"[Signed]　　　　　　　　　　　　　　　Kleinhans & Simonson,
　　　　　　　　　　　　　　　"Per John A. Stratton & Co., Agents."

This communication does not appear to have been transmitted to Jones at the time. On the following day,—that is to say, October 11, 1893,—Jones telegraphed to his agent, Pope, as follows: "I accept the offer in your telegram of October 2nd, provided the notes are properly secured on the property. [Signed] Sam. H. Jones." And on the same day Pope indorsed upon the complainants' offer of October 10th the following acceptance: "Accepted. Sam'l H. Jones, by Curran Pope, acting under authority of telegram of October 11, 1893,"—and attached the telegram, or a copy thereof, to his acceptance. At the time of the making of this acceptance the complainants paid to Pope, for Jones, as part of the purchase money, $1,000 in cash, which was receipted for by Pope, in the following form:

　　　　　　　　　　　　　　　　　　"Louisville, Ky., October 11, 1893.

"$1,000. Received of Kleinhans & Simonson one thousand dollars ($1,000) in part payment, as per contract, on $10,000 cash payment on 99x83 feet, northeast corner Fourth and Jefferson streets, for which I am to make a good title, free of all incumbrances, and give general warranty deed. If unable to make said deed, am to refund the one thousand dollars.

　　　　　　　　　　　　　"Sam'l H. Jones, By Curran Pope, Agent."

The possession of the property was not delivered, but continued in Crutcher & Stark. On the 21st day of October, 1893, the complainants addressed the following communication to Pope in reference to the occupation of the property:

"Dr. Curran Pope, Agent S. H. Jones—Dear Sir: We agree to extend time for possession of property, 99x83 feet, northeast corner Fourth and Jefferson streets, to sixty days from date of deed, provided you cannot get possession in thirty days; but you must do all in your power, legally and otherwise, to get possession within the time originally agreed.

　　　　　　　　　　　　　　　　　　　　　　　"Kleinhans & Simonson."

But in the meantime Crutcher & Stark, without any communication with Pope upon the subject, sent a telegram to Jones offering $130,000 for the property, stating that they had been informed by his agent that it was not for sale. After some correspondence by letter and telegram between Jones and Pope, in which the former complained of Pope that he had not obtained as good a price as he ought from Kleinhans & Simonson, and on the other hand, by Pope, that the offer of Crutcher & Stark was a dishonorable attempt at

circumvention, and insisting that the agreement with Kleinhans & Simonson had been made in good faith, and that Jones was bound, in law and morals. to carry it out, Jones at length refused to perform the agreement of Pope with Kleinhans & Simonson, and entered into a contract for the sale of the property to Crutcher & Stark for the sum of $125,000, of which $25,000 was to be paid down. This last-mentioned contract was made on the 30th day of October, 1893, and on the same day Crutcher & Stark, with sureties, executed a bond in the penal sum of $25,000, which, after reciting the sale from Jones to Crutcher & Stark, and that Kleinhans & Simonson might set up a claim as prior purchasers of the property, and might institute suit for damages, or specific performance, and that Pope might demand commissions from Jones upon the sale of the property to Kleinhans & Simonson, obligated the makers of the bond to indemnify and hold Jones harmless against any loss or damage he might be put to by reason of any such suit, including any costs for attorney's fees and expenses incurred in defending it, that might be brought by Kleinhans & Simonson, or by Pope. On the 6th day of November following, Kleinhans & Simonson brought this suit for specific performance of the contract which they claim Jones had made with them for the sale of the property, by his telegram of acceptance, of October 11th, of their offer of October 2, 1893. Elizabeth Dunbar Jones demurred to the bill in the United States circuit court, alleging that it contained no equity upon which the court could give a decree to the complainants against her. By leave of the court the complainants' bill was amended on the 19th day of April, 1894, and the substance of that amendment was that it contained an allegation that the contract sought to be specifically enforced by complainants in their bill was that set forth in the communication from Pope to Jones on the 2d day of October, 1893, and accepted by Jones by his telegram to Pope of October 11, 1893, both which communications have already been set out in the foregoing statement. There is much correspondence, as is shown by the record, between Jones and Pope, and between Jones and Crutcher & Stark; but as the questions to be decided hinge upon the construction and effect of the communications between the parties which have been above exhibited, the other correspondence in no wise materially affecting the same, such other correspondence will not be further referred to. There is also some oral testimony by witnesses in the record, but that does not affect the vital parts of the case. The case was heard in the court below upon pleadings and proofs as to the defendant Samuel H. Jones, and upon the bill and demurrer as to the defendant Elizabeth Dunbar Jones. That court, being of opinion that there had been no meeting of the minds of the parties complainant and the defendant Samuel H. Jones, whereby they had assented to the same terms of agreement, held that there was no legal contract between them, and that, therefore, the bill could not be sustained. The bill was accordingly dismissed, and complainants bring the case here by appeal.

O'Neal, Phelps, Pryor & Selligman and Dodd & Dodd, for appellants.

Stone & Sudduth, for appellees.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

Having stated the case as above, SEVERENS, District Judge, delivered the opinion of the court.

We think it quite clear that it was competent for the parties to become bound by correspondence carried on in the way in which this was,—by letters and telegrams,—and that these, when put together, if they made out an assent of the parties to the terms of sale, would make a binding agreement, which could be specifically enforced, and that such a mode of creating a binding contract would be sufficient under the statute of frauds of the state of Kentucky, which seems to be not essentially different from that of other states, in re-

quiring written evidence of the agreement of the vendor of real estate, and of the authority of the attorney, when the making of the agreement is not the personal act of the owner, but is made by his agent in his name. Lyon v. Pollock, 99 U. S. 668; Ryan v. U. S., 136 U. S. 83, 10 Sup. Ct. 913; Minnesota Linseed Oil Co. v. Collier White-Lead Co., 4 Dill. 431, Fed. Cas. No. 9,635; Fry, Spec. Perf. 291; Mechem, Ag. § 92; Godwin v. Francis, L. R. 5 C. P. 295; Saveland v. Green, 40 Wis. 431. Negotiations on the part of the vendors were carried on through Pope, as their agent. We say the "vendors," intending thereby, of course, to include Mrs. Jones, because it was undoubtedly expected that she would join in making the proper conveyance. We do not, however, intend to imply that she was, in any legal sense, a party to these negotiations. Counsel for complainants attributes to Mr. Pope a larger capacity, as agent, than we think the evidence justifies. We can entertain no doubt, after an examination of the testimony, that Pope had no general authority to make a sale of the Mozart Hall property, and that his powers were limited to a mere communication of the proposals of the buyer to Jones, and of Jones' responses to such offers. He was therefore a special agent, the limitation of whose powers was well known to the complainants; and they can rely upon no act of his in fixing the terms of purchase, which he was not specially authorized to make. Morrill v. Cone, 22 How. 75; Butler v. Maples, 9 Wall. 766; Hennessey v. Woolworth, 128 U. S. 438, 442, 9 Sup. Ct. 109; Chinnock v. Ely, 4 De Gex, J. & S. 638; Hamer v. Sharp, L. R. 19 Eq. 108; Pom. Spec. Perf. § 77; Mechem, Ag. § 288.

We come then to the main question in the case, which is whether the principals ever came to an agreement. When the original petition in the case was filed in the state court, the complainants based their suit upon a supposed contract created by their offer of October 10th, and the acceptance thereof on October 11th by Pope, for Jones, under the authority of Jones' telegram to Pope bearing the same date as Pope's acceptance of the offer made on October 10th. This telegram of October 11, 1893, was as follows: "I accept the offer in your telegram of October 2nd, provided the notes are properly secured on the property." Thus it will be seen that the authorization of Pope by Jones was to accept a contract of the terms of October 2d. This is plainly indicated by the language of the telegram itself; and, if that were doubtful, it is made clear that Jones' authorization of acceptance had no reference to the offer made on October 10th, for he then had no knowledge of that proposition. It follows that Pope was without authority to bind his principal to the terms contained in complainants' proposition of October 10th, unless that proposition was in fact identical with, and a mere continuation of, the proposition of October 2d. Whether it was so or not we will consider further on. The statement of the alleged contract made in the original petition leaves a fatal hiatus, in not setting forth what was the offer contained in Pope's telegram of October 2d, for it was that offer only which the petitioner shows Jones had given Pope authority to accept. It was not stated in the petition that the offer of October 2d was the same as the offer of October 10th, and

there was no presumption that it was so. After the case was re-moved into the circuit court of the United States, and during its pendency there, the incongruity of the contract, as originally stated in the petition, seems to have occurred to the learned counsel for the complainants; and, in the hope of putting the alleged contract upon a surer foundation, leave was obtained from the court to amend the bill, and this was done. By this amendment the complainants' ground was shifted, and the contract which the amended bill asked the court to enforce was a contract constructed upon the proposition of the complainants' communication by Pope to Jones of October 2, 1893, and the alleged acceptance thereof by Jones in his telegram to Pope of October 11th, and the proposition of the complainants of October 10th was relegated to a new place, the allegation being that this was drawn up merely for the purpose of carrying into more expanded form the contract alleged to have been made by complainants' proposition of October 2d and Jones' telegram of October 11th; and it is alleged that the instrument bearing date October 10th was not intended to vary the original contract, and that if it does so it is a mistake, and contrary to the intention of the parties, and should be reformed. But, unfortunately for the complainants, the new ground does not furnish them any better standing than that originally taken. In the first place, the evidence fails to show a binding acceptance by Jones of the offer of October 2d. The tele-gram indicating an acceptance was addressed to Pope, his own agent, and not to the complainants. It is manifest that the understanding of all parties was that the acceptance was to be made by Pope by some further affirmative act on his part to be done, in the way of closing the sale. That this was so is also shown by the actual trans-action which occurred on the 11th of October, when Pope signed the complainants' offer of October 10th in behalf of Jones, and then at-tached the telegram of that date as his authority for signing Jones' acceptance. Jones' telegram, in the circumstances, amounted to only an authorization, and indeed, being addressed, as it was, to one who was in no sense the agent of the proposed purchasers, was not sufficient to bind the vendor, under the statute of frauds.

But there is another difficulty. The instrument of October 10th, made by the complainants, was made the day before the date of Jones' telegram authorizing the acceptance of their offer, and this circumstance negatives the contention that it was made in the elabo-ration and further explanation of the contract already made; and the oral testimony taken in the case fails to satisfy us that this paper of October 10th, signed by the complainants, was in fact intended to be anything else than to be the foundation of the contract they proposed to make. We are convinced that the fact was that, while the com-plainants were waiting for Jones' reply to their offer of October 2d, they formulated a fresh offer, and then, when Jones' telegram came, Pope, instead of executing his authority by accepting the original offer of October 2d, accepted the other offer of October 10th, assum-ing that that amounted to practically the same thing as the first offer, and would be equally acceptable to his principal. We have no doubt that this general statement embodies the substantial fact.

We are therefore to consider whether the complainants' proposition of October 10th, which Pope, in behalf of Jones, accepted, was in truth the same thing as the offer of October 2d, which Jones authorized Pope to accept. The offer of October 2d, as communicated, reserved to the payee the privilege of paying all notes for the deferred purchase money on or before five years. That of October 10th made them payable on or before maturity, the maturity of the last note being ten years after date. The offer of October 2d was to pay all the notes, if desired, at the end of five years, if money should be easy. There was nothing of that kind in the offer of October 10th. In the original offer it was stipulated that the purchasers would improve the property at once. There was no stipulation of that kind in the offer of October 10th. · In the offer of October 2d was a proposition to insure for the benefit of the vendor, to secure him, no amount at which the insurance should be made being stated. In that of October 10th the agreement was to insure for the same purpose for at least $20,000, and an insurance for that amount would have answered that stipulation. In the offer of October 2d, possession was required to be given in 60 days from that date. In that of October 10th, possession was to be given within 30 days after the date of the deed of conveyance. And an entirely new term was inserted in the offer of· October 10th, in the form of a stipulation that the vendor should pay the commission of Stratton & Co. for selling the property, thus attempting to convert Stratton & Co. into the relation of agents for Jones. In fact, Stratton & Co. were never the agents of Jones, but were, and continued to be, acting as the agents of the complainants in the transaction. If, on the other hand, we compare the offer of October 10th with that laid before Pope on October 2d, instead of the form in which the latter actually transmitted it to Jones, upon the assumption that Jones was responsible for Pope's negligence in the transmission of the offer, and that the complainants had the right to suppose that the vendor was dealing with them upon the footing of their offer as made (see Insurance Co. v. Waterman, 6 U. S. App. 549, 560, 4 C. C. A. 600, 54 Fed. 839), it will be found that the variations are quite as important, and trench quite as deeply into the substance of the contract. Now, some of these stipulations in the complainants' offer of October 2d, it must be confessed, were somewhat vague, and it may be that their vagueness would start a doubt whether the terms of their offer were sufficiently definite to make a legally binding contract. But several of the stipulations we have referred to are sufficiently definite and distinct to furnish the basis of a comparison with those contained in the later offer, and it is manifest from such comparison that it is impossible to say that the acceptance of one would make a contract identical with one made by the acceptance of the other.· While it may be—and we think it quite probable that such would have been the result—that Jones would not have objected to the variations from the first offer contained in the second, which was accepted by Pope, but for the intervention of other parties, and the prospect of obtaining a larger purchase price by disavowing the act of Pope and accepting the better bid of the interveners, yet we are not at liberty to act upon any con-

jecture as to whether Jones would have ratified Pope's act, whether or not the new parties had come into the field. In the first place, a court of equity has no power to enforce the specific performance of a contract which is not already established between the parties; and, in order to give ground for the action of the court, it must be made clearly to appear that a definite and binding legal contract exists. Carr v. Duval, 14 Pet. 77; Marble Co. v. Ripley, 10 Wall. 339, 359; Nickerson v. Nickerson, 127 U. S. 668, 8 Sup. Ct. 1355; Dalzell v. Manufacturing Co., 149 U. S. 315, 13 Sup. Ct. 886. Then, recurring to the rules of law whereby such binding contract may be formed, it is an elementary doctrine that, to constitute a valid contract, the minds of the parties must have met, and agreed to the terms of their agreement. It is necessary, not only that the parties shall have assented to the several terms of the contract, but, in order that there shall be any bond which shall tie the parties in mutual obligations, their assent must be communicated to each other. Smith v. Hughes, L. R. 6 Q. B. 607, per Blackburn, J.; Cornish v. Abington, 4 Hurl. & N. 549; Cox v. Troy, 5 Barn. & Ald. 474; Browne v. Hare, 3 Hurl. & N. 495; Shepherd v. Gillespie, 3 Ch. App. 764; In re East of England Banking Co., 4 Ch. App. 14; Mactier v. Frith, 6 Wend. 103; White v. Corlies, 46 N. Y. 467. Where it is apparent that one party has not consented to the several terms to which the other has agreed, no contract is formed. If the divergence is of anything which partakes of the substance of the contract at all, there is no legal agreement; and the court is not at liberty to speculate upon the question whether some stipulation which it might think of minor importance, or some variation which it might think would not have influenced the parties in making the contract, can be dispensed with, and the parties held, in disregard of them. Bank v. Hall, 101 U. S. 50; Eggleston v. Wagner, 46 Mich. 610, 620, 10 N. W. 37; Pol. Cont. c. 1; Leake, Cont. 17 (3d Ed.); De Sollar v. Hanscome, 158 U. S. 216, 15 Sup. Ct. 816. In the case last cited the bill was filed to compel specific performance. The vendor had given authority to his agent to sell certain real estate in Denver for $5,000, one-half cash, and the balance one-half in one and one-half in two years. The agent had sold by contract which required only $200 of the cash payment down, and $2,300 in three weeks. And, while the contract price was nominally $5,000, the actual price was $4,950, the agent throwing off $50 from his commission. It was held that the agent had transcended his authority, and specific performance was refused. Applying these rules to the present case, we can reach no other conclusion than that arrived at by the court below, which was that the proof failed to establish a contract between the parties for the purchase and sale of the property in question. As this result is fatal to the case of the complainants, it is unnecessary to discuss the other questions which were argued at the hearing. The result is that the decree of the court below must be affirmed.