### LACEY et al. v. THOMAS.

(Circuit Court, D. Oregon. October 12, 1908.)

#### No. 3,143.

1. BROKERS (§ 10*) — EMPLOYMENT AND AUTHORITY — REVOCATION BY AGREEMENT.

Defendant signed a contract, reciting a sufficient consideration, by which he authorized plaintiffs as his agents to sell a tract of land for a stated price and to execute a binding contract in that behalf. Afterward defendant wrote plaintiffs that his wife refused to sign the deed for such

price and stating that they might as well take the land off the market. To this plaintiffs replied, in effect assenting, and asking for defendant's lowest price for the land, and stating, "When we hear from you we will say what we can do." *Held*, that by such letters the agency contract was entirely abrogated, leaving the matter at large for new negotiations between the parties.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. § 10.*]

2. VENDOR AND PURCHASER (§ 16*) — REQUISITES OF CONTRACT — ACCEPTANCE VARYING FROM OFFER.

Defendant, who was the owner of a tract of land, in answer to a letter from plaintiffs, who resided at a distance, asking for his lowest price for the land and that he give them a 10-day option to purchase, wrote that he would take "$5,000 cash, but no less," and stating, "If you want the place at that price you can have it any time; that is $5,000 clear." To this plaintiffs replied that they would accept the offer, and directing defendant to make out a deed, leaving blanks for the name of the grantee and the consideration, and to send the same, together with abstract of title, to a bank named at plaintiffs' place of residence, "to be turned over to us upon payment of $5,000." *Held* that, under the rule that an acceptance of an offer must be identical with the offer and unconditional, the letter of plaintiffs was not an acceptance which made a contract binding on defendant, in that the offer was to sell to plaintiffs, and not to some third party unknown, and the letter proposed to make the payment to a distant bank, and not to defendant at his place of residence, and also required him to furnish an abstract, in all of which respects there was a substantial variance between the offer and the acceptance.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 17, 18; Dec. Dig. § 16.*]

## At Law.

This is an action for the recovery of damages for breach of an alleged contract for sale of a tract of real property, which has been submitted to the court without the intervention of a jury. By stipulation of the parties relative to the evidence pertinent to the cause, it appears that plaintiffs are partners, doing business under the firm name of James D. Lacey & Co., and citizens and inhabitants of the state of Illinois, and that the defendant is a resident and citizen of the state of Oregon; that on January 28, 1907, the defendant, being the owner of the N. W. ¼ of section 36, township 8 S., range 9 W. of the Willamette meridian, in Lincoln county, Or., executed at Junction City, Or., to the firm of McClintock & Lacey, a certain paper, designated as "Agents' Authority to Sell," which, so far as material, reads as follows:

"To McClintock & Lacey: In consideration of valuable services performed and to be performed by you, I hereby give you exclusive authority to sell for me the following property: [Describing the land in question]—at any time within 60 days from the date hereof and until notified in writing, at the price of $4,000.00 (four thousand dollars) on the following terms: For cash. You are hereby authorized to accept a deposit, to be applied on the purchase price, and execute a binding contract of sale on my behalf, on making sale within the time above specified; and I bind myself and my heirs to make the purchaser a good and sufficient deed for the same."

On March 4, 1907, from Junction City, Or., the defendant wrote McClintock & Lacey at Portland, as follows:

"Some time in Jan. I let you have the selling of the N. W. ¼ of Sec. 36, T. 8, R. 9 W., in the Siletz. Since I told my wife about it, there has been no peace in the family. She says she positively will not sign the deed, so you might just as well take it off the market. She thinks I am letting it go too cheap. Will let you hear from me again if I can get her to change her mind. But at present there is no use to try to make a sale."

On the 14th of the same month McClintock & Lacey wrote the defendant in reply:

"Your letter received. Sorry to hear that Mrs. Thomas does not approve of the sale of your claim. Well, we won't kick. However, we would like to have your lowest cash price. Ask Mrs. Thomas what she will sign a deed for, and send us a ten-day option for the claim at that price. We have gone to the trouble of looking it, and would like to have a show, and at the same time we are willing to do the right thing by you. All we have asked at any time was your price. When we hear from you, we will say what we can do."

On March 18th defendant wrote McClintock & Lacey again, this time from Roseburg:

"Your letter of the 14th received. My wife says she will sell for $5,000 cash, but no less. I am not in the timber business and was not posted on prices, and after looking the matter over I think myself that $5,000 is dirt cheap for a claim of this kind, as it is one of the best in the Siletz Mountains. I got notice from the land office in Portland that my patent is there, so if any one wants to buy at that price they can get a good title. So if you want the place at that price, you can have it any time; that is, $5,000 clear."

On March 20th McClintock & Lacey replied:

"Your letter of the 18th inst. received. In reply will say that we will accept your offer, and you can make out your deed and send it, together with your patent and abstract, to the Bankers' & Lumbermen's Bank of this city, to be turned over to us upon payment of $5,000. You will be able to get an abstract of title from C. B. Crosno, Toledo, Or. Leave the grantee's name and consideration in the deed blank, so we can fill it in later. Please acknowledge receipt of this and let us know when you will have the papers here."

Without further correspondence with McClintock & Lacey, and on the 25th of March, 1907, the defendant and his wife sold the land to one R. F. Williams. On April 18, 1907, plaintiffs purchased of Williams for a consideration of $9,000. At all the times involved by these transactions McClintock & Lacey were agents of the plaintiffs, and the alleged contract was entered into by McClintock & Lacey for and in behalf of the plaintiffs. The amount of damages prayed for is $4,000, being the difference between the alleged purchase price agreed upon, namely, $5,000, and the amount which the plaintiffs were obliged to pay to Williams for the land in order to get the title.

Platt & Platt, for plaintiffs.

J. N. Brown, for defendant.

WOLVERTON, District Judge (after stating the facts as above). The crucial question involved by the controversy is whether there was a completed or consummated contract entered into between the parties for the sale by the defendant to the plaintiffs of the tract of land mentioned. In the view I take of the case it may be conceded that McClintock & Lacey were the agents of the plaintiffs, and acted for them in that relation in every step taken looking to the consummation of the alleged contract. So we may lay aside any question of agency, except to remark the real character of the instrument denominated "Agents' Authority to Sell."

Without more—that is, independent of further correspondence or negotiations between the parties—this paper must be considered to have constituted a completed agents' contract, authorizing the sale of the land in behalf of the defendant and the execution of a binding contract to that end. Furthermore, the contract having recited that valuable services had been and were to be performed by the agents, there was consideration sufficient, prima facie, to support it. The recitation is tantamount to an admission in the writing to that effect, concluding the parties, until rebutted by competent and sufficient proof to the contrary. 6 Am. & Eng. Enc. of Law, 765. The effect, however,

164 F.—40

of the two letters immediately succeeding the execution of this contract was to abrogate it entirely; the reason inducing the abrogation being the refusal of the defendant's wife to sign a deed of conveyance upon the terms specified. Following upon the reason assigned, the defendant directed the agents that there was no use to try to make a sale, to which they assented; their language being, "We won't kick." The expression is forcible, and not to be misunderstood, however inelegant it may be considered. The agents then requested the defendant to give them the lowest price he and his wife would be willing to accept as an inducement to sign a deed for the property, and to give them a 10-day option to purchase at the price named. In closing their letter they say: "When we hear from you we will say what we can do."

The effect of these letters is persuasive and convincing that the intendment of the parties was to set the entire matter at large again, and to open new negotiations looking to concluding another and different and distinct contract, if they were able so to agree. McClintock & Lacey's letter, consenting to a revocation of the agents' contract, opened the way for a new proposal from the defendant, and another and a new agreement. Responding, therefore, to their inquiry, the defendant proposed to sell for "$5,000 cash, but no less," and concluded by saying: "So, if you want the place at that price, you can have it any time." In brief, to bring the negotiations in close relation, the agents requested of the defendant that he and his wife should fix a price that they would be willing to take for the land, and to send them a 10-day option to purchase, promising that they would say what they could do when they heard from him. To this letter the defendant replied, four days later, proposing to take $5,000 cash for the place at any time. These are the terms of proposal of substance coming from either way, and at this juncture it is clear that there was yet no agreement, no final meeting of the minds of the parties, and hence no completed contract. Two days later, and probably in due course of return mail from Portland to Junction City, the agents replied:

"We will accept your offer, and you can make out your deed and send it, together with your patent and abstract, to the Bankers' & Lumbermen's Bank of this city, to be turned over to us upon payment of $5,000. You will be able to get an abstract of title from C. B. Crosno, Toledo, Or. Leave the grantee's name and consideration in the deed blank, so we can fill it in later."

To this there was no further answer on the part of the defendant, and the inquiry is whether these later negotiations resulted in a completed and binding contract between the parties. There was no assent whatever by defendant to McClintock & Lacey's proposal to take a 10-day option for the claim, and the entire contract, if one subsists at all at the end of all negotiations, depends upon the last offer of the defendant and the legal consequence and effect of McClintock & Lacey's rejoinder thereto. Whether the contract was concluded depends upon this inquiry: Was the rejoinder an unconditional acceptance of the substantial terms of defendant's proposal? The unvarying rule is thus stated:

"An acceptance, to be effectual, must be identical with the offer and unconditional. Where a person offers to do a definite thing, and another accepts conditionally, or introduces a new term into the acceptance, his answer is either

a mere expression of willingness to treat or it is a counter proposal, and in neither case is there an agreement." 9 Cyc. 267.

Mr. Justice Washington states the rule in Eliason v. Henshaw, 4 Wheat. 225, 228, 4 L. Ed. 556, as follows:

"It is an undeniable principle of the law of contracts that an offer of a bargain by one person to another imposes no obligation upon the former until it is accepted by the latter according to the terms in which the offer was made. Any qualification of or departure from those terms invalidates the offer, unless the same be agreed to by the person who made it. Until the terms of the agreement have received the assent of both parties, the negotiation is open and imposes no obligation upon either."

The principle is distinctly approved and followed in a later case in the Supreme Court, namely, Carr v. Duval, 14 Pet. 77, 10 L. Ed. 361. So in James v. Darby, 100 Fed. 224, 227, 40 C. C. A. 341, 345, Rogers, District Judge, sitting in the Circuit Court of Appeals, Eighth Circuit, says:

"The rule is unvarying, and the authorities uniform, that in order to constitute an acceptance of an option, or an offer to sell, the acceptance must be unconditional. There must be no new terms imposed, and no departure from those offered. If to the acceptance a condition be affixed, or any modification or change in the offer be requested, by the party to whom the offer is made, this, in law, constitutes a rejection of the offer."

The nicety and strictness with which the rule should be observed is characterized by the language of Severens, District Judge, sitting in the Circuit Court of Appeals, Sixth Circuit, in Kleinhans v. Jones, 68 Fed. 742, 749, 15 C. C. A. 644, 651. He says:

"Where it is apparent that one party has not consented to the several terms to which the other has agreed, no contract is formed. If the divergence is of anything which partakes of the substance of the contract at all, there is no legal agreement; and the court is not at liberty to speculate upon the question whether some stipulation which it might think of minor importance, or some variation which it might think would not have influenced the parties in making the contract, can be dispensed with, and the parties held, in disregard of them."

To like purpose see, further, Kelsey v. Crowther, 162 U. S. 404, 16 Sup. Ct. 808, 40 L. Ed. 1017, and Equitable Life Assur. Soc. v. McElroy, 83 Fed. 631, 28 C. C. A. 365.

Under these authorities, treating defendant's letter of the 18th as an offer to sell for a cash price of $5,000 (and such it was in reality in legal effect), the acceptance was coupled with conditions which must be deemed material and of substance, the most vital of which is that defendant was required to send an abstract of the title. It is also of importance that the deed was required to be made and executed in blank as it pertained to the name of the grantee, and that the money was made payable to the Bankers' & Lumbermen's Bank in Portland, rather than at Junction City, the place of residence of the defendant. While the defendant asserted that his title was good, his offer did not include the furnishing of an abstract, which would be of some trouble and expense to him. Furthermore, he proposed to sell to the agents, and to none other. Being agents for plaintiffs, the proposal might be considered as one to sell to the principals; but it could not be extended to include any one whose name the agents might deem expedient to

enter in the blank. It was also important that the defendant should be paid at the place of his residence. The implication of his offer was that he should be so paid. It cannot be said that the acceptance was flat, and that the other matters contained in the McClintock & Lacey letter of March 20th were mere suggestion; for the condition was imposed that the $5,000 should be paid at the Bankers' & Lumbermen's Bank of Portland, when the deed was executed as indicated, and it, together with an abstract of title, was sent to such bank. That such conditions were matters of substance can scarcely be questioned, and, under the strict rule of the law, the concluding letter of McClintock & Lacey did not constitute an acceptance of defendant's offer to sell.

For these reasons, the findings and judgment of the court must be for the defendant. The complaint of plaintiffs will therefore be dismissed.