## JAMES et al. v. DARBY.

## DARBY v. JAMES et al.

(Circuit Court of Appeals, Eighth Circuit. February 13, 1900.)

### Nos. 1,296, 1,297.

**1. VENDOR AND PURCHASER—CONTRACT—ACCEPTANCE OF OPTION.**

An acceptance of an option to purchase property must be unconditional, to create a contract; and a letter from the holder of an option to the owner of the property stating that he had determined to accept "if details are satisfactorily arranged," and if an abstract of title was furnished which his representative should pronounce perfect, where the option contained no such requirement, is not an acceptance of the option, but in legal effect a refusal to accept, which terminates the option.

**2. SAME—CONTRACT—OFFER AND ACCEPTANCE.**

A letter written by one of two owners in common of a tract of land, without the sanction of the other owner, accepting an offer to purchase the entire tract, does not create a contract for the sale of the land binding on either of the parties.

**3. SAME.**

Defendants, who were owners in common of a tract of land, gave plaintiff a written option to purchase the same within a time stated. Shortly before the expiration of that time, plaintiff wrote defendants that he had decided to take the land on the terms proposed, if they would furnish an abstract which should be approved by his attorneys as showing a perfect title. There was not time after such letter was written to have an abstract made and examined before the option would expire. One of defendants answered that he had no doubt the title was good, and that he would have an abstract made. *Held*, that such correspondence did not operate to extend the option, which plaintiff had rejected by adding conditions to his acceptance, nor to create a new contract binding upon either party, but amounted to no more than negotiations looking to a future contract.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

The defendant in error, Dr. W. J. Darby, while in Coahoma county, Miss., on other business, ascertained that the plaintiffs in error, Dr. R. R. James and R. P. McGregor, who were defendants in the court below, owned a certain tract of land in that county containing 520 acres, known as the "Crudup Tract," and that it was for sale. He thereupon went to Cottonplant, Ark., where the plaintiffs in error resided, to negotiate the purchase of the land. The negotiations resulted in the plaintiffs in error executing and delivering to him an option to purchase the land, in the following words:

"We hereby agree to give Rev. W. J. Darby thirty days' option on a certain 520 acres of land we own in Mississippi. Exception to this is, on condition

we have a liberal and good offer for the land, we agree to telegraph said Rev. W. J. Darby, and give him one week after telegram. Option price, $2,500, one-third cash, balance one and two years, eight per cent. interest.
"November 2nd, 1896.                                         R. R. James.
                                                         "R. P. McGregor."

After getting the option Dr. Darby returned to Evansville, Ind., where he resided. Before leaving, it was arranged that subsequent correspondence should be had with Dr. James. (This arrangement will be more particularly referred to later.) Subsequently Dr. Darby wrote Dr. James the following:

"Evansville, Indiana, Nov. 12, 1896.

"Dr. R. R. James, Cottonplant, Arkansas—Dear Sir: Since arriving home, I have arranged to make another trip to Mississippi, and some friends will go with me. I hope our visit may result satisfactorily, and that we may be able to arrange a trade. Of course, I cannot tell as to myself until I make a thorough investigation of your land, and then my friends will have to determine whether they care to invest. Our visit there will be about the 23rd or 24th, after which date I will write you as promptly as possible what we will do.
"Very truly, yours,                                         W. J. Darby."

Dr. James did not answer this letter. Subsequently Dr. Darby wrote to Dr. James the following letter:

"Vicksburg, Mississippi, Nov. 25, 1896.

"Dr. R. R. James, Cottonplant, Arkansas—Dear Sir: If details are satisfactorily arranged, I have decided to accept your proposition regarding Crudup tract of land in Coahoma county, namely, $2,500 for 520 acres, payable one-third cash, and the remainder in one and two years, with interest at eight per cent. Of course, the first consideration is an abstract of title that my representative at Clarksdale would pronounce perfect. I take for granted, of course, you can furnish this, and that there will be no 'hitch' on this question. Having no occasion to question this, I failed to speak to you about it. A rumor has since come to me that there is possibly a flaw in your title; there being some minor heirs concerned, who may have some claim on a part of it. I attach no significance to this, but as I want to proceed with some plans, on the basis that the trade will be closed, I wish you would write me at once on this point. If you say you know the title to be perfect, I will proceed with my plans, and the transfer can be made when arrangements are completed. I am out for a month's trip in Louisiana and Texas. Please address me at Fort Worth, Texas, care Rev. A. B. Buchanan.
"Very truly, yours,                                         W. J. Darby."

This letter Dr. James answered, as follows:

"Cottonplant, Arkansas, November 27, 1896.

"Rev. W. J. Darby, Fort Worth, Texas—Dear Sir: Yours of the 25th to hand, stating you would take the land, if title was all right, for the sum of $2,500, one-third cash, balance one and two years, eight per cent. interest from date. I think there will be no trouble about the title. McGregor investigated the title before he bought it, and says the title is all right. I will write Maynard & Fitzgerald, of Friarpoint, to-day, to have abstract made of title. We are willing to give you a warranty title. Inclosed find letter from your friend, J. L. Cooper, making claim of $100 for his assistance in making sale of the land. You will doubtless remember I spoke to you about having told him to sell the land for $2,600, taking $100 for his trouble. You thought if you bought it he would not want anything, and you said you would make it all right with him. I have never learned to deal but one way, and that is 'straight.' Therefore I inclose his letter, that you may see his claims.
"Yours, very truly,                                         R. R. James."

Subsequently Dr. Darby wrote the following letter:

"Nortonville, Kentucky, December 22, 1896.

"Dr. R. R. James: I have a letter from Mississippi to-day which indicates that my plans for pushing work as quickly as transfer is made are checked, and am at a point where only a short delay and a little uncertainty as to closing

100 F.—15

trade will undermine confidence and cost me heavily, preventing my accomplishing anything for a whole year, and make 1898 of but little profit. Two things have got in my way: A letter you wrote some one there under date of December 14, throwing doubt over the proposed trade between us, and naming terms to another. I assume you simply replied to some one's inquiry, saying that the trade was not closed between us yet, that the deed had not been executed and no money paid, and that in case the trade was not consummated your terms would be so and so. That is all right, but it starts rumors that block my way; and I will be greatly obliged if you will write this party again, indicating your confident expectation that the trade will be consummated as proposed, and ask him to so state to any persons with whom he has communicated on the subject. This is a small matter, but it may mean much to me. As I have said, if you can make a good deed, I will conform to the terms. If you cannot make a good deed, there is no use of proposing to sell to anybody else. What you wrote me in Texas about the deed is satisfactory, and I have no doubt the abstract will be all right. Confident of this, I am ordering lumber, arranging for building, and have cleared land, etc. If you have received information from your attorneys throwing any doubt whatever on the title, please wire me to that effect, on receipt of this, at Evansville, Indiana, and I can stop matters before they go far enough to do me any damage. Unless I countermand orders by the 25th, contracts will be made that will be burdensome in case the transfer is interfered with on the score of defective title. As to our trade, I do not consider anything in the way except the chance as to title. If the payment of money is a question in your mind as to transfer, I will at once arrange for the cash payment by depositing in a bank in your town in your favor on notice that transfer is complete, or will make any other arrangement as to same in the manner indicated. Certainty being necessary, please hurry up your abstract men. An old rumor as to bad title has also got in my way.

"Very truly, yours,                                    W. J. Darby."

Dr. James responded to the above letter by telegram, which Dr. Darby received on the 24th of December. The telegram is in these words:

"Land sold, deed made, money paid. Will write you.     R. R. James."

On the same day Dr. James wrote Dr Darby as follows:

"Cottonplant, Arkansas, December 27, 1896.

"Rev. W. J. Darby, Evansville, Indiana—Dear Sir: More than a week ago we received from R. H. Wildberger a deed, written out, and a draft on the bank inclosed. We were to sign deed and keep the check. We have been trying to sell the land for a number of years, and you were not altogether certain whether or not your people would take it. This trade was a certainty, and we signed the deed. We had given you thirty days' option, and forty-five days elapsed before we sold. Had we of known for certain you would have taken it, we would have sold it to you. You remember you told us when here not to miss a certain sale if we had such an opportunity. Had I of known where you were, I would have wired you. Mr. Wildberger was buying for his mother, who is visiting him from Kentucky. If we have disappointed you, we are very sorry, but, as I told you when you were here, we were anxious to sell the land.

"Yours, very truly,                                    R. R. James."

When Dr. Darby was informed that James and McGregor had sold the land, he instituted this suit for a breach of contract to sell, and for cause of action alleges: "That on or about November 27, 1896, the defendants agreed in writing with the plaintiff to sell him, for the sum of $2,500, to be paid one-third cash, balance in one and two years, bearing interest at 8 per cent., a plantation in Coahoma county, Mississippi, described as follows: [Description follows.] That shortly thereafter defendants refused to perform their part of the contract, and plaintiff alleges, upon information and belief, that defendants have, since the execution of the contract above mentioned, sold and transferred said land to some third person. That plaintiff offered to perform his part of the contract, and has ever been ready and willing to do so. That he has been damaged by defendants' breach of contract in the sum of four thousand dollars, for which amount he prays judgment." The defendants

answer, and deny that on or about November 27th they agreed in writing to sell plaintiff, for the sum of $2,500, to be paid one-third cash, balance in one and two years, with interest at 8 per cent. per annum, the land mentioned in the complaint, and deny that they refused to perform their part of the contract, or that plaintiff offered to perform his part of it, and say that it is not true that he has been ready and willing to do so; and they also deny any damages by reason of any breach of contract on their part. They then say that on November 2, 1896, they gave to the plaintiff an option on the tract of land in controversy, which land, was not described in the option, and allege that plaintiff never complied with the terms of the option, never accepted the same, never made the cash payment, and never offered to do so. They further allege that the option was voluntary and without consideration. They also plead the statute of frauds. Such other facts as are necessary to the determination of the case will appear in the opinion.

J. W. House, for James and McGregor.

S. R. Cockrill and Joel E. Williamson (Ashley Cockrill, on the brief), for W. J. Darby.

Before CALDWELL and SANBORN, Circuit Judges, and ROGERS, District Judge.

ROGERS, District Judge, after stating the case as above, delivered the opinion of the court.

At the trial of the case the court below gave the following instructions:

"(1) Gentlemen of the jury, there is really but one matter for your consideration in this case. Although much testimony has been introduced in regard to the beginning of this transaction, as to an option having been given, the conversations at the time, etc., yet the court tells you that the defendants made an undertaking with the plaintiff that they would and they did sell the plaintiff the land in controversy. There was a contract of sale consummated between these parties, and the only question for your consideration, inasmuch as the defendants have parted with the title to the lands and cannot execute a deed,—cannot carry out their contract,—is, has the plaintiff been damaged by his failure to obtain the land for which he bargained? This you will determine, and there is no other question left to your consideration. (2) You are to determine this from the testimony in this case. You are to arrive at it by determining from the testimony what was the actual value of the land on the 22d day of November, 1896. If you find that it was more than $2,500, one-third cash, the balance in one and two years, with interest at the rate of 8 per cent. per annum, which the plaintiff agreed to pay for it, you will say how much more, and subtract the $2,500 from it, and that will be the damages which he sustained. That part of it is simple, but it may not be so simple to determine what the actual value was. That you are to determine from the testimony,—what was the actual value."

Plaintiffs in error objected at the time to the giving of each of these instructions, and, their objections being overruled, they in apt time separately and severally excepted to each of them, and, having thereby saved the questions, now urge that the giving of each of these instructions was error.

At the hearing and in the printed brief it was not contended by counsel for defendant in error that Dr. Darby's letter of November 25, 1896, was an acceptance of the option of November 2, 1896. Moreover, the plaintiff does not declare on a contract arising out of those two writings, but, on the contrary, declares on a contract alleged to have been made on or about the 27th of November, 1896. But, if such contention were made, it could not be upheld. The rule is unvary-

ing, and the authorities uniform, that in order to constitute an acceptance of an option, or an offer to sell, the acceptance must be unconditional. There must be no new terms imposed, and no departure from those offered. "If to the acceptance a condition be affixed, or any modification or change in the offer be requested, by the party to whom the offer is made, this, in law, constitutes a rejection of the offer." Weaver v. Burr, 31 W. Va. 736, 8 S. E. 743, 3 L. R. A. 94; Kelsey v. Crowther, 162 U. S. 404, 16 Sup. Ct. 808, 40 L. Ed. 1017; Harding v. Gibbs, 125 Ill. 85, 17 N. E. 60; Corcoran v. White (Ill. Sup.) 7 N. E. 525; Langellier v. Schaefer (Minn.) 31 N. W. 690; Sawyer v. Brossart, 67 Iowa, 678, 25 N. W. 876; Bruner v. Wheaton, 46 Mo. 363; Minneapolis & St. L. Ry. Co. v. Columbus Rolling-Mill Co., 119 U. S. 151, 7 Sup. Ct. 168, 30 L. Ed. 376; Lawson, Cont. pars. 15–17.

In the letter of November 25, 1896, Dr. Darby manifestly does not accept the option. He says, "If details are satisfactorily arranged, I have determined to accept," etc. He does not say, "I will accept," etc., but "I have determined to accept," provided or "if details are satisfactorily arranged." The inference is that, if details are not satisfactorily arranged, he has determined not to accept. What details? His letter does not state. In the same letter the first new requirement he specifies is "an abstract of title my [his] representative at Clarksdale would pronounce perfect," and says he takes for granted this abstract will be furnished. But no such provision is found in the option. He then refers to a rumored defect in the title, and adds, "I attach no significance to this [meaning the rumor], but, as I want to proceed with some plans on the basis that the trade will be closed, I wish you would write me at once on this point. If you say you know the title to be perfect, I will proceed with my plans, and the transfer can be made when arrangements are completed." What arrangements? He does not say, and James and McGregor could only infer. But, if James will say he knows the title is perfect, he (Darby) wants to proceed with his plans, and have the transfer made "when the arrangements are completed," but the option contained no such provisions as these. These were new conditions imposed, changes suggested. Moreover, the very language of this letter clearly indicates that Dr. Darby did not intend by it to unconditionally accept the option, for he says, "I want to proceed with some plans on the basis that the trade *will be closed*" (italics ours); looking to the future in which to close the trade, provided the other conditions are acceded to. This letter was written just seven days before the option expired. Dr. Darby could not have reasonably expected that this letter, written at Evansville, Ind., and addressed to Dr. James at Cottonplant, Ark., could reach the latter in time for him to procure an abstract of title to lands in Coahoma county, Miss., and for Dr. Darby's attorney to pass on the title, even if James had known who his attorney was, and notify Dr. Darby in time for him to have accepted the offer and tendered the cash payment at Cottonplant, Ark., before the option expired. The letter of November 25, 1896, was not, therefore, an acceptance of the option. It was, under the authorities, and in fact, a rejection thereof. It imposed conditions which could not be complied with within the time limited

by the terms of the option, and both parties, in the very nature of things, must be held to have known it. The option of November 2, 1896, and the letter of November 25, 1896, therefore, created no contract, for the reason that the minds of the parties did not meet, but, on the contrary, the terms offered were distinctly rejected by the requirement of other and additional terms. So strict are the authorities, that after Dr. James received this letter of November 25, 1896, Dr. Darby would not have been allowed, if he had so desired, to have recalled it, and then accepted in unconditional terms the option of November 2, 1896. The receipt by James of that letter rendered the option nugatory between the parties. Lawson, Cont. par. 17; Sheffield Canal Co. v. Sheffield & R. R. Co., 3 Railway & Can. Cas. 132; Davis v. Parish's Representatives, Litt. Sel. Cas. 157; Minneapolis & St. L. Ry. Co. v. Columbus Rolling-Mill Co., 119 U. S. 151, 7 Sup. Ct. 168, 30 L. Ed. 376, and cases cited.

But it is urged that, conceding the letter of November 25, 1896, to have been a rejection of the option of November 2, 1896, it was also a new proposition by Darby to James and McGregor to purchase the same land on the terms therein stated, and to be gathered from the option and other writings in evidence, and that the new proposition was accepted by Dr. James in his letter to Darby dated November 27, 1896, and that McGregor was bound thereby. We have seen that the letter of November 25, 1896, was a rejection of the option; and it is but fair to say that it was also either in the nature of an expression of a willingness to negotiate further in reference to the land, or it was in the nature of a counter proposal upon the part of Dr. Darby. In either event it was concededly intended for both of the plaintiffs in error, for this is an action for a breach of a contract alleged to have been made by James and McGregor jointly for the sale of lands owned by them as tenants in common. The letter, however, of November 25, 1896, is addressed to R. R. James. As stated, it was a rejection of the option previously executed by James and McGregor, and that rejection ended all relations subsisting between Dr. Darby and James and McGregor as to the option. 119 U. S. 151, 7 Sup. Ct. 168, 30 L. Ed. 376. If it constituted a new proposition, also, it was a proposition addressed to James only, on the assumption, no doubt, that James had the authority to represent McGregor. Did James have any such authority as to this new proposition? Or if the letter of November 25, 1896, was in the nature of a suggestion of a willingness to negotiate further, did James have any authority to represent McGregor with reference to further negotiations not embraced in the option? McGregor did not sign the letter of November 27, 1896, by which it is now claimed that James and McGregor accepted the new proposition, nor did he sign any other letter found in this record. Did he either authorize James to write them, or did he know they were written, and ratify the action of James in doing so? Let us see. In Dr. Darby's deposition the following appears:

"Q. After getting that option [meaning the option of November 2, 1896], what did you do then? A. I went home, to Evansville, Indiana. Q. Before leaving there, what arrangements, if any, did you make about further correspondence, and with whom was that correspondence to be conducted? A. I

told these gentlemen I would communicate with them soon, and wanted to know if I should write to Dr. James, he being the man who was doing the writing there, and he said: 'Yes;' that McGregor didn't like to write letters. 'You can write me.' This was in the presence of McGregor."

And this is all the evidence Dr. Darby offered to show that Dr. James had authority to bind McGregor, either in reference to the option, or in reference to any other future or subsequent negotiations. It will be seen that this testimony of Dr. Darby's relates to the option. It was the option concerning which Dr. Darby was to write. There were no other business relations between the parties. It was concerning the option, therefore, that McGregor requested Darby to write to James. It was concerning the option James was, by implication, authorized by McGregor to write to Darby. Naturally, when the option was rejected the authority ceased. Nothing was contemplated then making it necessary to write about anything else.

In Dr. James' deposition the following occurs:

"Q. When you received Dr. Darby's letter from Vicksburg, the 25th, you answered it on the 27th? A. Yes, sir. Q. It was your intention then to give that abstract to him, was it not? A. As I usually did, when I got that letter I called Mr. McGregor into my office and read him the letter. Mr. McGregor said to me: 'There is nothing in that fellow. He is not going to take the land. He was to have laid the matter before his board, returned immediately, and closed the trade. There is nothing in him.' And McGregor objected to my answering the letter or sending him the abstract. I insisted upon sending the abstract, or having it prepared, from the fact that we would possibly have use for it, even if he did not buy the land. Others might call for it."

This is all the evidence in the record as to James' authority to represent McGregor in contracting to sell the land to Dr. Darby. In our opinion, it not only falls short of conferring any authority on James to conduct further negotiations for McGregor with Dr. Darby after the latter had rejected the option for the sale of the land, but it shows affirmatively that McGregor objected to James writing the letter of November 27, 1896, or sending the abstract, for the reason that he did not believe that there was anything in Darby, and that he would not take the land. If it be conceded, therefore, that in Arkansas authority can be conferred orally upon an agent to sign a writing, and bind his principal thereby for the sale of real estate (which it is not necessary, in our view of this case, to decide), two things stand in the way to prevent the letters of Dr. James from binding McGregor: First, James did not sign any paper purporting to bind McGregor or undertaking to bind him; and, second, if he did he did so without authority, and McGregor is not bound thereby. It is clear, therefore, that McGregor never at any time accepted the new proposition contained in the letter of November 25, 1896. Never having accepted that proposition, Dr. Darby, having rejected the option, had no cause of action against him. The new proposition in the letter of November 25, 1896, concededly was intended to be made to both James and McGregor; but, the proposition not having been accepted by McGregor, there was not a moment of time from the receipt of that letter by Dr. James down to the period when the land was sold in which Dr. Darby might not with

absolute safety have withdrawn the proposition, for the reason that, until the proposition was accepted by both parties to whom it was made, there was no contract binding any of the parties. Burton v. Shotwell, 13 Bush, 271. And, if there was no contract binding upon either of the parties, there could be no such thing as a breach of it.

But it is not necessary to rest the case on this view. In our opinion, the record discloses no contract between Dr. Darby and Dr. James and McGregor, or either of them, except the option contract which was rejected by Dr. Darby in the letter of November 25, 1896. In Minneapolis & St. L. Ry. Co. v. Columbus Rolling-Mill Co., 119 U. S. 151, 7 Sup. Ct. 169, 30 L. Ed. 377, Mr. Justice Gray, delivering the opinion of the court, said:

"As no contract is complete without the mutual assent of the parties, an offer to sell imposes no obligation until it is accepted according to its terms. So long as the offer has neither been accepted nor rejected, the negotiation remains open and imposes no obligation upon either party. The one may decline to accept or the other may withdraw his offer, and either rejection or withdrawal leaves the matter as if no offer had ever been made. A proposal to accept or an acceptance upon terms varying from those offered is a rejection of the offer, and puts an end to the negotiation, unless the party who made the original offer renews it or assents to the modification suggested. The other party, having once rejected the offer, cannot afterwards revive it by tendering an acceptance of it."

The whole doctrine covering this aspect of the case is here concisely and clearly stated. The fair and just construction of the letters, in the light of the facts and circumstances, satisfies us that the minds of the parties never met at the same time with reference to the terms suggested in the letter of Dr. Darby of November 25, 1896. In Dr. Darby's deposition the following appears:

"Q. After this option was given to you on the 2d of November, 1896, you wrote them the letter of the 27th [meaning the 25th, because Dr. Darby wrote no letter on the 27th], in which you claim that you accepted that option, didn't you? A. Yes, sir. * * * Q. Haven't you reserved the right, as shown in these letters [meaning the letters in evidence], to reject the land entirely, if the matter was not satisfactory to your attorneys? A. I should think so. That is what I meant to do. That is what I thought I ought to do. I didn't want the land if it didn't have a good title."

So it is clear that when Dr. Darby wrote the letter of November 25, 1896, he intended it as a conditional acceptance of the option, which was tantamount, in law, to a rejection of it; and it is certain, if his own testimony is to be believed, that at the time he gave his deposition he regarded that letter as a conditional acceptance of the option. Now his position is shifted. He now contends that the letter of November 25th was not a conditional acceptance, but a new proposition. Can he be allowed to hold James and McGregor to his understanding when he wrote the letter or when he gave his deposition, or to his understanding now, as may suit his convenience? The letter did not mean two separate and distinct and different things, each dependent upon the shifting opinions he at different times may have entertained in regard thereto. Dr. Darby's suit is based upon the alleged existence of a contract between himself and James and McGregor. If, as he understood, the letter of Novem-

ber 25, 1896, was a conditional acceptance, it was a rejection, and there was no contract. If it was a new proposition, intended at the time as such, then it must have been accepted by James and Mc-Gregor, and by them intended as such. In other words, the minds of the parties must have met at the time the proposition was made and accepted, in order to constitute a binding contract upon the parties. On the 22d of December, 1896, which was after the land had been sold, Dr. Darby wrote Dr. James a letter in which he said:

"Two things have got in my way: A letter you wrote some one there [meaning in Mississippi] under date of December 14, throwing doubt over the *proposed* trade between us, and naming terms to another. I assume you simply replied to some one's inquiry saying the trade was not closed between us yet, that the deed had not been executed and no money paid, and that in case a trade was not consummated your terms would be so and so. That is all right, but it starts rumors that block my way, and I will be greatly obliged if you will write this party again, indicating *your confident expectation that the trade will be consummated as proposed,* and asking him to so state to any persons with whom he has communicated on the subject. This is a simple matter, but it may mean much to me. *As I have said, if you can make a good deed I will conform to the terms. * * * As to our trade, I do not consider any thing in the way except the chance as to title.*" (Italics ours.)

This letter was written three days after the land had been sold, and it is clear that up to that time Dr. Darby did not consider himself unconditionally bound to accept the land. He still stood upon the question of title. These last extracts from the letter of December 22d do not show that Dr. Darby at that time thought that he had accepted the option by his letter of November 25, 1896, as stated in his deposition quoted supra; but they do show that his idea at that time as to his status was precisely what it was when he gave his deposition, and testified that he claimed to have accepted the option by his letter of November 25th.

But the more important question in this regard relates to the understanding of McGregor and James. It is quite clear that Dr. Darby understood the letter of November 25, 1896, to be a conditional acceptance of the option of November 2, 1896. He so testifies, and all his correspondence so indicates. Can he reasonably insist that James and McGregor understood the letter of November 25th as a new proposition, when he did not so understand it himself, and did not so intend it? If he did not so understand it, and did not so intend it, then the terms of the alleged contract were not agreed upon by the parties, because Darby did not understand it as a new proposition, and this without reference to what James and McGregor understood. But if James and McGregor did not understand the letter of November 25th as containing a new proposition, then certainly they did not intend to accept the new terms which it imposed. Their answer of December 27, 1896, to that letter, did not, in terms, accept the requirements suggested in it. The very first sentence in the letter of November 27th is as follows: "Yours of the 25th to hand, stating you would take the land if title was all right" (then reciting the terms stated in the option), indicates that James understood the letter of November 25th to be a conditional acceptance of the option, and not a new proposition. That is precisely what it was. It did not say, "I offer to give," or, "I make

you this proposition," or anything of that character. It said, "I have determined to accept," etc., and James replies, "Yours of the 25th to hand, stating you would take the land if title," etc.; thus showing that he did not intend thereby to accept the new proposition, and did not understand one was being made. Then follows, in James' letter of November 27th, several statements, down to his reference to the claim of Cooper for $100 for commissions. But can these statements be construed into an agreement to comply with Darby's suggestions made in the letter of November 25th? James does not say he will furnish an abstract of title that Darby's attorney "would pronounce perfect." He does not say "he knows" the title is "perfect." He says "he thinks it is"; that McGregor had examined it before buying the land, and says it is "all right." He also says, "We are willing to give a warranty deed." James, in his deposition, says that while the negotiations were pending for the option "something was said in regard to the title; that McGregor told him [Darby] that he had had the title examined, and that it was good, and that we would give a warranty title." So that these statements in James' letter of November 25th had already been made to Darby by McGregor in the presence of James before the option was given. This testimony is uncontradicted, and must be accepted as true. In the letter of November 27th James does say, "I will write Maynard & Fitzgerald, of Friarpoint, to-day, to have abstract made of title." It is insisted that this statement shows that James understood the letter of November 25th was a new proposition, and that he intended to accept it. James explains this. He says, in substance: That when the letter of November 25th was received he called in Mr. McGregor, as he usually did. That "Mr. McGregor said to me, 'There is nothing in that fellow. He is not going to take the land. He was to have laid the matter before his board, and returned immediately and closed the trade. There is nothing in him.' And McGregor objected to my answering the letter or sending him the abstract. I insisted on sending the abstract, or having it prepared, from the fact we would possibly have use for it, even if he did not buy the lands. Others might call for it." It must be remembered that at this time the option had not expired. James and McGregor could not tell whether Darby would accept the land before the option expired or not. James, no doubt, thought, if he did not accept the option before it expired, that he might agree to take it before they could sell it to other persons, and, at all events, seeing that the abstract was called for, if another offer was made it might be called for again, and therefore they might need the abstract anyway. In substance, he so states. We think this explanation is consistent with James' letter, reasonable, and a satisfactory answer to the contention of the defendant in error. In the letter of November 27th James then refers to Darby a new difficulty,—the claim of Cooper for $100 out of the purchase price for his commissions for making the sale. It is true that Dr. Darby, in his letter of December 2d to Dr. James, written on the Southern Pacific Railroad, between Houston and San Antonio, stated: "Yours of November 27th received. I am glad to learn the title to

the land is clear. When you hear from the parties preparing the abstract of title, you can communicate with me further." He also agrees to pay $100 to Cooper, if it has to be paid, and gives his address. It is insisted that these statements show an acquiescence by Dr. Darby that the title was good. But before this letter could have been received by Dr. James the option had expired. Moreover, the very language he uses shows that he did not intend even to accept James' representations as to the title, but still held on to the necessity of an examination of the abstract of title. There was no other correspondence between the parties which could in any way affect the question of the alleged contract between them. The letter of the 25th of November was written just one week before the option expired, and not a word is said in that letter, or in the two which followed (the last of which was written on the day the option did expire), about an extension of the life of the option. These letters, out of which it is claimed the contract sued on arose, must be read in the light of the actions of the parties, and the circumstances under which the option was given and the letters written. There is some apparent conflict between the evidence of Dr. Darby and that of James, McGregor, and the witness Echols as to what occurred when the option was executed. James, McGregor, and Echols all testify, in substance, that, when the option was requested by Darby, James and McGregor at first refused to give it, assigning as a reason that they were anxious to sell, and other persons were then negotiating for it, and that they did not want to tie themselves up so they could not accept the first offer made; that they finally gave the option because Dr. Darby insisted that he must have the option in order to lay the matter before others interested with him in the purchase. In giving his account of the negotiations at Cottonplant on the 2d of November, Dr. Darby does not say anything about this evidence. He neither affirms nor denies, though he was recalled to the witness stand after it was given. His account is to some extent at variance with it, but the weight of the evidence is against him, and the version of the plaintiffs in error must prevail. Is it at all reasonable that, after having given the option under the conditions and circumstances stated, 25 days thereafter, in the letter of November 27th, at a time when the option lasted only five days longer, James and McGregor intended, without consideration, and without being specifically requested, to give an indefinite option on the land to Dr. Darby,—at a time, too, when the uncontradicted evidence shows that McGregor believed that he would not take the land, and said there was nothing in him, and that he did not intend to take it, and protested against answering his letter or procuring the abstract of title? We think not. We do not think James and McGregor intended by the letter of November 27th to accept the new terms contained in the letter of November 25th, nor do we think they did accept them, or that they ever understood the letter of November 25th to be a new proposition. The language does not fairly bear that import. The circumstances all conspire to show that they did not so understand or intend, nor did Dr. Darby so understand or intend. As stated, these letters,

uncertain in meaning, must be interpreted in the light of the surrounding circumstances, and the actions of the parties who wrote them. Assuming for the present purpose that James was authorized by McGregor to write the letters in evidence which he did write, we conclude that the fair construction to be placed upon these letters is that the minds of the parties never met with reference to the terms of the sale, and hence there was no contract, and, being no contract, no suit can be maintained for a breach thereof.

An examination of the other assignments of error is not essential, in the view we take of this case, to its correct determination. The instructions 1 and 2 given by the court were both erroneous. The case is reversed and remanded, with instructions to grant a new trial.