SHARP v. WEST.

(District Court, W. D. Arkansas, Ft. Smith Division. January 30, 1907.)

**1. VENDOR AND PURCHASER—CONTRACT—OFFER AND ACCEPTANCE.**

Defendant, having endeavored to purchase the interest of plaintiff's children in certain land, concluded to withdraw his offer for their interest, and in a letter to plaintiff stated that he owned five undivided shares in the land, and, if he could get $300 apiece for them, he would be willing to take it, requesting plaintiff to see if he could not get M. to buy the same. Plaintiff promptly replied that he would take the five shares himself as per defendant's offer at $300 per share, and would deposit the $1,500 in any bank defendant wished in F., defendant to mail deed to the bank for delivery to plaintiff on payment of the $1,500. *Held*, that, plaintiff's answer to defendant's letter did not constitute an acceptance of defendant's offer, but contained terms and conditions which defendant had a right to reject, and hence was insufficient to constitute a contract of sale.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, §§ 17, 18.]

**2. SAME—TENDER.**

Where a vendor repudiated the alleged contract of sale before any tender could be made, no tender was necessary; it being sufficient that plaintiff ordered in his bill to enforce specific performance to bring the money into court.

**3. SPECIFIC PERFORMANCE—DELAY.**

A delay of three years in instituting suit for specific performance of a contract for the sale of land, unexplained, is sufficient to justify the court in refusing such relief.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Specific Performance, §§ 327–331.]

N. B. Williams, for plaintiff.

B. R. Davidson and Read & McDonough, for defendant.

ROGERS, District Judge. This case is here on demurrer to the bill. The grounds of demurrer are that the alleged contract was void under the statute of frauds (section 3654, Kirby's Dig.); second, that it does not state facts sufficient to entitle plaintiff to any relief.

The substantial facts stated in the bill are these: Samuel H. West, a citizen of Missouri, owned five undivided interests or shares in the land described in the bill. West lived in St. Louis, and Sharp lived at Fayetteville, Ark. On the 13th of October, 1902, West addressed the following letter to Sharp:

"St. Louis Southwestern Railway Company.

"Office of General Attorney.

"S. H. West.                                    St. Louis, October 13th, 1902.

"Mr. W. E. Sharp. Fayetteville, Ark.—Dear Ed: I withdraw the offer I made for your childrens' interest in the home place. I own five shares and if I can get $300.00 apiece for them I would be willing to take it. I wish you would see if you cannot work it some way to get Mr. Moore to buy them from me. Of course, I do not want anybody to know that I have concluded not to buy any more at this time, for it might interfere with my making the sale. If you can get that amount, I think you are foolish for not taking it, but that is your own business.

"Your brother,                                    Sam. H. West."

Three days later, on October 17th, Sharp wrote the following letter to West:

"Fayetteville, Ark., Oct. 17th, 1902.

"Mr. Sam. H. West. St. Louis, Mo. Dear Bro: Received your letter a day or so since, and have concluded to take your five shares in the old home place myself, as per your offer of $300.00 per share, and will deposit the $1500.00 in any bank you wish in Fayetteville, you to mail deed to bank and have them hand me deed and pay you the $1500.00.

"Yours truly, W. E. Sharp."

Sharp then alleges that he held himself in readiness to pay the purchase price of said interests in said lands until the 25th of October, 1902, upon which date he received a letter from the defendant declining to make and deliver a deed to the land. He further alleges that he holds himself in readiness to pay the said sum of $1,500, and offers to bring the same into court, and prays for a specific performance. The bill was brought to the August term of the Washington Chancery Court for the year 1905. The questions presented for consideration arise out of the foregoing facts.

It is insisted, first, that the two letters copied above do not take the case out of the statute of frauds, because the land is not sufficiently identified by the correspondence. The general rule is that in agreements for the sale or conveyance of land the property is sufficiently identified if so described that by proof aliunde the description may be fitted to the land. Warvelle on Vendors, vol. 1, par. 132. The lands in controversy are referred to in this correspondence as the "home place," or the "old home place." The parties to the suit are brothers-in-law, and, if it were necessary to decide, I feel inclined to hold that there would be no question of making the description certain, but I do not regard the determination of that question essential to the disposition of the demurrer, and therefore do not decide it. It is also insisted that West made no offer to sell the land in controversy to Sharp, and therefore that there was no contract between them when Sharp wrote his letter of acceptance. It is obvious from West's letter to Sharp that he had been endeavoring to purchase the interest of Sharp's children in the land, but for reasons which do not appear had concluded to withdraw his offer for their interests. He then says:

"I own five shares, and if I can get $300.00 apiece for them I would be willing to take it. I wish you would see if you cannot work it some way to get Mr. Moore to buy them from me."

Sharp promptly, and in apt time, wrote the letter above quoted, and, if Sharp had concluded his letter at the word "share," I think the contract would have been complete, because I think it was a sufficient offer on the part of West to sell the land to anybody that wanted to buy it; but, unfortunately for Sharp, he added:

"And will deposit the $1,500.00 in any bank you wish in Fayetteville, you to mail deed to bank and have them hand me deed and pay the $1500.00."

Just why West declined to have the business concluded in that way, which seems to have been fair and convenient for both parties, is not made to appear, and is therefore a matter of speculation. Nevertheless, this language used by Sharp was a modification of West's offer. It notified West that he would deposit the $1,500 in any bank that he

might wish in Fayetteville, but that West was to mail his deed to the bank, and have the bank hand him the deed and he pay the bank the $1,500 for West. These were terms and conditions not embraced in West's offer. They were terms and conditions which he had a right to reject, and the insertion of them in Sharp's letter was, in effect, not to accept West's offer, but to reject it and then make West an offer to purchase on the terms and conditions contained in his (Sharp's) letter. West had a right to reject this. It does not appear from the bill that he ever accepted it. He had a right to have the money paid to him in St. Louis. This was implied from the very terms of his proposition. Sawyer v. Brossart, 67 Iowa, 678, 25 N. W. 876, 56 Am. Rep. 371. The general principle governing contracts of this character is correctly announced in volume 1, Warvelle on Vendors, § 100, in these words:

"The proposition must be accepted upon the terms stated, and until unqualifiedly accepted it remains a mere offer. Maclay v. Harvey, 90 Ill. 525, 32 Am. Rep. 35; Bruner v. Wheaton, 46 Mo. 363; Kennedy v. Gramling, 33 S. C. 367, 11 S. E. 1081, 26 Am. St. Rep. 676. On the other hand, if an answer to an offer by letter proposes modification, the party making the offer must speak his acceptance of the modification if he desires to hold the writer of the answer." Nundy v. Matthews, 34 Hun (N. Y.) 74.

It is stated in a footnote by the same author that:

"The offer to accept in terms varying from those proposed amounts to a rejection of the offer and the substitution of a counter proposition which cannot become a contract until assented to by the first proposer." Fox v. Turner, 1 Ill. App. 153.

The plaintiff relies upon Matteson v. Scofield, 27 Wis. 671, to overcome the principle above stated. A careful analysis of that case shows that it falls clearly within the rule above stated. The modifications proposed by the purchaser, in answer to the vendor, were accepted by the vendor, and therefore the contract was complete. Moreover, the modifications in that case the court held were not in fact modifications, but mere suggestions, which did not affect the unqualified acceptance by the purchaser of the vendor's offer. In that case the purchaser recites in his letter of acceptance the terms of the offer, and then says, "I will take the land at the price and terms above stated."

Then follows certain suggestions as to how the conveyance should be made; but the suggestions were not conditions, and, if they had been, they were accepted by the vendor, who himself agreed to go where the lands were situate, and where the purchaser resided, and consummate the deal. Not so in this case. Here the reading of the letter shows that Sharp accepted the offer, to be carried into execution in a certain way, but West did not acquiesce in the manner in which the contract was to be carried into effect, and therefore the contract failed. This question was before the Court of Appeals of this circuit in James v. Darby, 100 Fed. 224, 40 C. C. A. 341, and the doctrine was there announced as above, and that after able and exhaustive arguments both orally and on briefs.

But, again, the bill fails to show that plaintiff ever made any tender at any time of the purchase money. The general rule is that a party in default has no standing in equity to compel performance by another

party also in default. But this rule has its exceptions, and where, as in this case, the defendant repudiated the alleged contract before any tender could be made, none was necessary. It is sufficient that the plaintiff offer in his bill to bring the money into court. Warvelle on Vendors, vol. 2, § 756.

It is also insisted that inasmuch as no tender was ever made and no suit begun until over three years after the alleged contract was made, it would be inequitable and unjust for a court of equity, under such circumstances, to compel specific performance, even if the alleged contract was originally valid and binding. This court, upon authorities quoted in the case of Erastus Jones v. Lawrence A. Byrne et al., 149 Fed. 457, said:

"Specific performance is not of absolute right. It rests entirely in judicial discretion, exercised, it is true, according to the settled principles of equity, and not arbitrarily or capriciously, yet always with reference to the facts of the particular case. Willard v. Tayloe, 8 Wall. 557, 567, 19 L. Ed. 501; Marble Co. v. Ripley, 10 Wall. 339, 357, 19 L. Ed. 955; 1 Story's Eq. Jur. § 742; Seymour v. Delancey, 6 Johns. Ch. (N. Y.) 222, 224. 'The question in cases of specific performance,' Lord Eldon said, 'is not what the court must do, but what, under the circumstances, it may do, in the exercise of its discretion to grant or withhold relief of that character.' White v. Damon, 7 Ves. 30, 35; Radcliffe v. Warrington, 12 Ves. 326, 331. It should never be granted unless the terms of the agreement sought to be enforced are clearly proved, or, where it is left in doubt, whether the party against whom relief is asked in fact made such an agreement. Colson v. Thompson, 2 Wheat. 336, 341, 4 L. Ed. 253; Carr v. Duval, 14 Pet. 77, 83, 10 L. Ed. 361; Huddleston v. Briscoe, 11 Ves. 583, 591; Lanz v. McLaughlin, 14 Minn. 72 (Gil. 55); Waters v. Howard, 1 Md. Ch. 112, 116."

In this case there is not the semblance of any reason or fact assigned why the institution of this suit was delayed over three years after the alleged contract was made. The court is without information as to whether or not the conditions have changed. It is not advised as to whether the real estate has enhanced or diminished in value. What improvements have been made is not shown. Indeed, the court is absolutely in the dark as to what advantages or disadvantages to the respective parties would result if a specific performance were decreed. The general rule governing cases of this kind will be found in Warvelle on Vendors, vol. 2, par. 746, and is substantially this: That a specific performance will not be decreed where any unreasonable delay has occurred, and especially if the value of the property or the conditions of the parties has changed in the meantime. In other words, where the lapse of time has been very great, or where the value of the property has materially changed, the laches of the one will excuse performance by the other, and equity refusing to interfere will leave the parties to their remedies at law.

In this case, for the reason that the bill fails to make it appear that the minds of the parties ever met in an agreement on the one side to sell, and the unqualified acceptance on the other to buy, and for the additional reason that no excuse or reason is assigned in the bill for the unusual delay, the demurrer to the bill of complaint will be sustained. It is so ordered.