## W. & H. M. GOULDING, Limited, v. HAMMOND et al.

(Circuit Court of Appeals, Fifth Circuit. February 6, 1893.)

### No. 52.

1. **WRIT OF ERROR—REVIEW—DECISIONS OF LAW AND FACT.**

Where all evidence as to a contract is in the shape of letters and telegrams, and by agreement of counsel all questions as to the construction thereof are submitted to the court, which instructs the jury to return a verdict, such instruction must be considered as based entirely upon the construction of the contract as a question of law, and is subject to review like any ruling upon questions of law; and the proceeding is not the same as a trial by the court under Rev. St. § 700.

2. **CONTRACT—CONSTRUCTION—TELEGRAMS.**

Plaintiffs, having the option to require delivery any time from June 1st to September 30th of a cargo of phosphate rock sold by defendants, on August 21st wired defendants to "please extend time for delivery of rock until November 1st. Telegraph reply." *Held,* that this was only a request to allow plaintiffs the option of taking the cargo in October, and did not give defendants reasonable grounds to believe that plaintiffs intended to abandon their rights under the original contract to require delivery before the end of September. 49 Fed. Rep. 443, reversed.

3. **SAME—DEFINITIONS.**

The word "extend" means "to enlarge, prolong, expand, stretch out," and is not synonymous with "postpone," which means "to defer, to put off, to place after or beyond something else."

4. **SAME—PROPOSAL BY TELEGRAM—ACCEPTANCE.**

Where the plaintiff makes a proposal by telegram, with request to reply by telegram, and the defendant replies by a telegram which contains no acceptance of the proposal, but a new proposal, and no notice that a letter is to be written, the plaintiff may treat his proposal as rejected, although a letter subsequently arrives accepting plaintiff's proposal.

In Error to the Circuit Court of the United States for the Eastern Division of the Southern District of Georgia.

Action by W. & H. M. Goulding, Limited, against Hammond, Hull & Co. for breach of contract. The circuit court gave judgment for defendants. 49 Fed. Rep. 443. Plaintiffs bring error. Reversed.

Statement by LOCKE, District Judge:

The plaintiffs, residing and doing business in the city of Dublin, Ireland, through T. V. Kessler, their agent at Baltimore, made a contract with the defendants, Hammond, Hull & Co., of Savannah, Ga., as follows:

"Savannah, Ga., 28th of May, 1889.

"Sold to Messrs. W. & H. M. Goulding, (T. V. Kessler, Agt.,) of Dublin, Ireland, for account of Messrs. Hammond, Hull & Co., a steamer cargo kiln-dried river phospate rock, as follows:

"Quantity. About twenty to twenty-five hundred (2,000–2,500) tons of 2,240 lbs. each, more or less.

"Price. Six dollars ($6.00) per ton of 2,240 lbs., delivered alongside buyer's steamer at seller's wharf, Battery Creek, near Port Royal, S. C.

"Analysis. Guaranteed fifty-five (55) per cent. of bone phosphate of lime by analysis of Prof. C. U. Shepard, Charleston, S. C.

"Delivery. Any time during June, July, August, and or September, 1889, at buyer's option.

"Terms of payment. Cash against documents on presentation at Baltimore, Md., or London, England, buyer's option.

"Conditions. Sworn weigher's weights and sampling at point of shipment. Due notice of charter to be given sellers soon as charter is made. Sellers to have privilege of stevedoring cargo at usual rate for such work.

"Brokerage. Payable by sellers on completion of contract at usual rate per ton.

[Signed]                              "J. M. Lang & Co., Brokers."

To which the following was added on May 31st, at the instance of Hammond, Hull & Co.:

"Steamers always afloat. Accepted.
[Signed]                              "Hammond, Hull & Co.,
                                        "Per H. P. Richmond, Atty."

On the 21st of August plaintiffs telegraphed defendants as follows:

                                "Baltimore, Md., August 21, 1889.

"Hammond, Hull & Co., Savannah, Ga.: Please extend time for delivery of rock until November first. Telegraph reply.
[Signed]                              "W. & H. M. Goulding."

The defendants the same day telegraphed in reply:

                                "Savannah, Ga., August 21, 1889.

"W. &. H. M. Goulding, Baltimore, Md.: Can't you make it December delivery? This preferred to November.
                                        "Hammond, Hull & Co."

The same day defendants wrote by mail as follows:

                                "Savannah, Ga., August 21, 1889.

"Messrs. W. & H. M. Goulding, Baltimore, Md.—Gentlemen: Replying to your telegram of even date, viz. 'Please extend time for delivery of rock until November 1st,' duly received, and to which we immediately replied, 'Can't you make it December delivery? This preferred to November,'— which we now confirm, we prefer December to November, and trust it may be your pleasure to make it December, thereby making the transaction agreeable to all interested. Of course, it is understood that we will make the delivery in November; yet we trust, as stated, you will have it December. Awaiting your reply, we remain your friends, truly,

                                        "Hammond, Hull & Co."

Upon the receipt of defendants' telegram of the 21st August, and before the receipt of their letter, plaintiffs, by their agent in Baltimore, wrote defendants this:

                                "Baltimore, Md., August 21, 1889.

"Messrs. Hammond, Hull & Co., Savannah, Ga.—Gentlemen: We wired you this A. M. as follows, which we now confirm: 'Please extend time for delivery of rock until November first. Telegraph reply,'—and we are now in receipt of your reply, for which accept our thanks: 'Can't you make it December delivery? This preferred to November.' This I have cabled to our Dublin office, and as soon as I receive their reply will advise you. Will you kindly inform us if we can load at quarantine, and what would be the additional expense. If your Mr. Hull, with whom the writer is acquainted, should come north, we would be pleased to see him, as we think an arrangement could be made to take your surplus rock, if you have any, or if likely to

mine extensively. Thanking you for promptly replying to our telegram, we are, very truly, yours, W. & H. M. Goulding, Ltd.

"Per T. V. Kessler."

On the 23d defendants wrote plaintiffs, their letter containing, among other things immaterial to any question herein, the following: "As our trade now stands, we understand that this rock is to be delivered in November, and that you may be able to extend the time to December, as intimated in our letter." On the 24th, and apparently before that letter was received, plaintiffs wrote defendants, acknowledging the receipt of their letter of the 21st, and notifying them that they had that day received cablegram from the Dublin office, informing them that they had chartered for September. On the 26th defendants wrote plaintiffs, complaining of their having chartered for September, and using this language: "Your telegram to us asked for a direct extension to November, which we were willing to do, and merely begged that you would make it December, instead of November, if possible, to which we got your reply, stating that you had communicated with your people, and would let us know in a few days whether or not you could make it December. We, of course, understood, and so wrote you, that you accepted the terms for November delivery, hoping that a December delivery would suit you as well. Now you come back, and say that your people have made a September charter, which throws us entirely out of gear. We have notified our dredging people of this change, and will, if necessary, send you their certificate to this effect. As the matter now stands, we cannot make a delivery before November, and you must govern yourselves accordingly. We wired you as follows this A. M.: 'Letter 24th received. We notified our dredging people that rock would not be wanted till November, and we cannot now make earlier delivery,'—which we now confirm." And the same day telegraphed plaintiffs' office in Baltimore that they had notified their dredging people that rock would not be wanted till November, and that they could not make the delivery. On the same day, before receiving either telegram or letter of that date, plaintiffs wrote: "From our letter of 24th instance you will see that we have chartered to take the rock during Septbr. If you will kindly refer to our telegram of the 21st inst., you will see that we wanted time extended until Nov. 1 (not November delivery) for rock delivery, but, as we have made charter for Sept. delivery, we will not require the time extended." On the same day, upon the receipt of defendants' telegram of the same date, they again wrote, reviewing the correspondence had, and using this language: "We are at a loss to understand upon what grounds you could construe an inquiry to mean November delivery." The telegram to which this was a reply was: "Based upon your request for extension to November, which we accepted on the 21st instant, we cannot make delivery sooner." On the 27th plaintiffs telegraph: "Steamer Tormore will be due about September 5th. Have cargo ready as per contract May 28th." The further correspondence is of no importance in determining the questions at issue, and was only expressive of the views of the parties of their rights under the circumstances. The steamer Tormore arrived, and reported ready for cargo, which was not furnished. Efforts were made to procure another cargo, but failed, and plaintiffs were compelled to cancel the charter at a cost of $2,311.59, for which, together with difference in price of phosphate rock they were compelled to purchase, and expenses, amounting in all to $4,644.63, this suit was brought.

Upon the trial, after the introduction of the original contract and telegrams and letters of the correspondence, the principal defendant was sworn as a witness, and was about to testify how the transaction was changed on August 21st, when counsel for the plaintiffs objected, claiming that the construction of the contract was for the determination of the court upon the letters and telegrams which had been submitted; whereupon counsel for both plaintiffs and defendants agreed that the question as to the construction of the contract and of the letters and telegrams with reference thereto be argued and submitted to the court, whereupon argument was had, and upon motion of defendants, and over the objections of plaintiffs, the court instructed the jury to return a verdict for the defendants, which was done, to which plaintiffs

excepted, filed a bill of exceptions, and brought the case here for review. The assignment of error consists of eleven specifications, the substance of all of which are embodied in the eighth, that "the court erred in directing a verdict for the defendants in said case."

Walter G. Charlton, for plaintiffs in error.

S. B. Adams, for defendants in error.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

LOCKE, District Judge, (after stating the facts.) The first question presented for consideration is how far the decision of the court below must control in the determination of the questions presented here. It is claimed by defendants in error that, the questions having been submitted to the court by the consent and upon the application of the plaintiffs' counsel, it was not within their right to now question the result of that submission; that the case stands upon the same ground as would one tried by a court without a jury, where no finding of fact can be questioned, and that the judgment below should not be reversed if it can be seen how the court below could reasonably have arrived at the conclusion reached. We cannot accept this view of the case. The question submitted to the court below was submitted as a question of law, and not as one of fact. It was submitted upon the joint agreement of counsel for plaintiffs and defendants, and so determined. It is not considered that it was the intention of either party to withdraw the consideration of any question of fact from the jury, or for the court in any way to take the place of a jury, as in a trial under section 700 of the Revised Statutes. The instructions to the jury to find a verdict for the defendants must be considered as based entirely upon the construction of the contract as a question of law, and subject to re-examination and review, the same as any ruling upon questions of law when excepted to.

The determination of the case rests entirely upon what construction is to be placed upon plaintiffs' telegram of the 21st of August, and the reply thereto. Before that there was nothing in doubt or uncertainty, the contract was complete, and the terms so positive and certain that no question could be raised as to its construction and meaning. Plaintiffs had the right to call for and demand the delivery of the rock at any time during June, July, August, or September. Did the request, or inquiry, if it may be so termed, contained in this telegram of the 21st, suggest or give the defendants any justifiable grounds to believe or claim that plaintiffs, by such a request, intended to abandon any of the rights that they had under the original contract to take the delivery of the cargo, at their option, at any time previous to the end of September? Upon the answer to this question the determination of the case rests. The original contract would stand in force until a new one was entered into by the mutual consent and understanding of both parties, and the question is, was there a new one made? We do not consider that the language of the telegram could be so construed, but only as a request to enlarge their privilege. The word "extend," used in the

sense in which it was here used, could not, in our opinion, in any way be construed to mean postpone or arbitrarily put off to later day. Neither the etymology of the word nor its ordinary use would permit such an understanding. The word "extend," used by plaintiffs, in derivation, construction, and the definition of every authority, means "to enlarge, prolong, expand, stretch out;" while the sense and meaning which defendants desire to apply to the telegram, are "to postpone, to defer, to put off, to place after or beyond something else." Webst. Dict.; Cent. Dict.; Amer. & Eng. Enc. Law, 583. We do not consider that any reasonable interpretation can be had of the language used which would express any idea different from that which would add the month of October to the time which plaintiffs had to claim the cargo.

The defendants' telegram of the same date in response was not an acceptance of the request made. It neither granted the application nor refused it, but made a request of their own, entirely different from that of plaintiffs. They had been requested to telegraph reply, and, after their response had been forwarded, and received by plaintiffs, the proposed transaction was closed, and any letter which had been written and mailed by defendants that day could have no weight in the correspondence. The plaintiffs had received a reply by telegraph, as asked, and, their request not having been accepted, nor any notice of a further reply by mail given, they could no longer be bound by their proposal. The Code of Georgia (section 2728) can only refer to a case where the proposition is made by letter, and the reply is communicated in the same way. Here one reply was made, in the manner requested, and no law would compel an awaiting another, or hold the party proposing to the effect of such second response. Defendants' new proposition was immediately telegraphed to plaintiffs' home office, but it was not accepted by them, and they immediately informed defendants of a charter's having been made for September, which information was at once forwarded to defendants, and was, in effect, a refusal to accept their application for a December delivery, and a withdrawal of plaintiffs' request for an extension.

There is another point which has been urged in behalf of defendants, and that is that when plaintiffs learned of the understanding that defendants had received of their proposed request, they did not at once disabuse their minds of this mistaken idea. Before the defendants' letter of the 21st had been received, their first proposal for making a December delivery, by telegraph, had been telegraphed to Dublin, and the answer appears to have been forwarded to them at once upon its receipt. This was a sufficient reply to their proposal. They had resorted to the mail, and could not, in justice, complain that plaintiffs did the same; nor does it appear that any such slight delay was in the least injurious to defendants' interest. The first direct declaration of defendants that they understood the time of delivery had been postponed to November was their letter of the 23d, which was replied to on the 26th, in which letter plaintiffs referred to their telegram of the 21st, and made the explanation that they had requested an extension of time un-

til November 1st, and not a November delivery. Again, on the same day, they say, "We are at a loss to understand upon what grounds you could construe an inquiry to mean November delivery." It appears that plaintiffs gave as early notice of the chartering of a ves-sel as could be demanded, and we find no unreasonable or injurious delay on the part of the plaintiffs in endeavoring to correct any misunderstanding of their intent in the minds of the defendants, and consider the court below erred in finding plaintiffs had no cause of action, and directing a verdict for defendants; and it is ordered that the judgment be reversed, and the cause remanded for a new trial.