GOFF, Circuit Judge.
This is an appeal from a decree entered in the chancery cause of J. C. Schultz, receiver of the Franklin Brass Company, against the Phenix Insurance Company of Brooklyn. The suit was instituted in the circuit court of Botetourt county, Va., on the 9th day of September, 1895, and removed, by appropriate proceedings, to the circuit court of the United States for the Western district of Virginia, by which court the decree complained of was entered on the 26th of September, 1896. The bill alleges: That the Franklin Brass Company was, in the year 1891, the owner of certain real and personal property, which is fully described, situated at Buchanan, Botetourt county, Va. That, being desirous of insuring said property, the company authorized J. B. Moore & Co., insurance brokers, doing business in Richmond, Va., to procure insurance for the term of one year against loss or damage by fire on such property, as follows: $33,000 on machinery, machines, etc., including patterns; $18,000 on buildings; and $5,000 on stock, material, and supplies. That J. B. Moore & Co., in July, 1891, applied to P. J. Otey & Co., insurance agents, doing business at Lynchburg, Va., for such insurance, who, after examination of the matter and inspection of the property, accepted the risks for the amount of $10,000, and delivered policies for the same to the insured. That, when these policies were reported to the insurance companies by their said agents, several of them objected to the form of the policies, of which J. B. Moore & Co., representing the Franklin Brass Co., were promptly advised. That P. J. Otey & Co. then requested that the policies should be returned, in order that the form might be changed, and that new policies containing the required specific form might be issued. That the Franklin Brass Company authorized their said brokers to make the proposed changes, and to procure the insurance in accordance therewith. That J. B. Moore & Co., on September 1, 1891, representing the Franklin Brass Company, wrote P. J. Otey & Co., representing the insurance companies, returning the old and giving instructions as to the new policies desired; and that this communication was replied to on the 2d of September, 1891, in which correspondence the form of the policies and the sums that could be placed in different companies, as also the rate of insurance, were referred to and discussed, but no agreement was reached. That on September 3, 1891, P. J. Otey & Co. sent the following telegram from Lynchburg to J. B. Moore & Co., at' Eichmond, having reference to said insurance, viz.: 'With specific form, will write ten thousand at ninety cents, if it will help you.” That J. B. Moore & Co., in a letter to P. J. Otey & Co., concerning the insurance, dated the 3d September, 1891, referring to such telegram, used this language, viz.: 'We also have your telegram that you can place 10,000 at 90c., and trust you will do so, as we would like to get it as low as possible. The amount on the patterns, that *339 is to be V10 of the entire insurance, is to be deducted from the amount wanted on machinery. As in our hurry we sent you the total amounts wanted on the different items, we haven’t any way of figuring it out ourselves. In sending the policies, we would be glad if you would return the original mem. sent you. We will be glad to receive policies from you as early as convenient. Send us policies for the full amount of the original order sent you.” That on the 4th September, 1891, at about 1 o’clock p. m., a fire occurred, by which all of said property was destroyed, the loss upon each item being greatly in excess of the aggregate insurance thereon. That, prior to said fire, P. J. Otey & Co. had indicated their willingness to insure said property, a full description of which, as also a division of the amounts of insurance on the several kinds of property, then being in their possession, with insurance placed amounting to $10,000, at 90 cents on the $100, if the assured, through its agents, would prepare a specific form, which it was alleged was duly prepared and deposited in the post office at Richmond, addressed to P. J. Otey & 'Co., on the 3d of September, 1891. That this form so mailed was satisfactory to said P. J. Otey & Co., as representatives of the insurance companies, and was accepted by them without objection. That, soon after the fire, said J. B. Moore & Co., as agents of the Franklin Brass Company, applied to P. J. Otey & Co. for the policy which they had agreed to furnish, and for the name of the company they had issued it for, tendering at the same time the premium therefor, and that they refused to deliver said policy, and declined to give the name of such company. That the plaintiff had been theretofore, by a decree of the circuit court of Botetourt county, in a cause therein pending, duly appointed receiver of said Franklin Brass Company, and fully authorized to take all necessary steps to collect its assets and discharge its liabilities. It was also set forth in the bill that the plaintiff had been but lately before informed that it was the Phenix Insurance Company of Brooklyn for which said P. J. Otey & Co. so acted in the telegram of September 3, 1891, and that at that time they were the duly-authorized agents of said company, having in their possession policies of insurance signed and executed by its officers, which they were authorized to fill and deliver. The plaintiff therefore charged that in consideration of a premium of $90, which the Franklin Brass Company, through its agents, agreed to pay, which was acquiesced in by P. J. Otey & Co., the said defendant did, on the 3d day of September, 1891, agree to insure for one year therefrom the Franklin Brass Company against loss and damage by fire to its said property in the sum of $10,000, in the proportions on said property theretofore agreed upon, and also that the defendant did then and there agree to write out and deliver a policy for the same. The prayer of the bill was that the defendant be required specifically to perform the said agreement to insure the property and deliver the policy; that it be ordered to pay to the plaintiff the sum of $10,000, the amount insured, less the premium of $90, with interest on the residue; and for further general relief.
To this bill the defendant filed a demurrer, which, after argument and consideration, the court overruled, for reasons set forth in an *340 •opinion filed and made a part of the record, which so fully and clearly •state the questions involved that this court, in disposing of the assignment of error relating to the demurrer, adopts the same, and quotes it in full, as follows:
“First ground of demurrer: That the receiver cannot sue on the contract sought to be enforced in this suit. The decree of the circuit court of Botetourt •county, appointing the plaintiff in this suit receiver of the Franklin Brass Company, expressly confers upon him the power to take any necessary step to get in the assets of the company, and for that purpose to bring such suits as may be necessary. This decree is the charter of his powers and authority, and imposes on him the duty of collecting and reducing into possession the assets of the company of which he is made receiver. And as he has succeeded to, and is invested with, all the rights, powers, and authority of the corporation •of which he is made receiver, he, in the opinion of the court, is the proper person to bring this suit. The corporation itself, being in the hands of a receiver, could not maintain this suit. The individual stockholders could not fio it, and there is no one else but the receiver who could do it.
“Second ground of demurrer: That the bill, while alleging that the letter •containing the form of policy was duly mailed by J. B. Moore & Co., at Richmond, to P. .T. Otey & Co., at Lynchburg, fails to allege that the said letter was duly stamped. The court thinks that the allegation that the letter containing the said form of policy was duly mailed carries with it the presumption that it was duly stamped, which was a requirement of law and the prerequisite to mailing. When a party alleges that he duly mailed a letter, the court must presume that he complied with the requirements of law, and stamped the letter. If it were material to allege the particulars as to the manner and mode of mailing the letter in question in this suit, such particularity is rendered unnecessary by the allegation in the bill that the said letter was duly received by P. J. Otey & Co.
“Third ground of demurrer: The third ground of demurrer advanced in the argument by counsel for the defendant is that the plaintiff does not file with his bill the contract which he prays to have specifically performed. The bill alleges that the plaintiff, through his agents, J. B. Moore & Co., a few days after the fire which destroyed the property, applied to P. J. Otey & Co., the agents of the defendant, for the policy which they agreed to furnish, and for the name of the company for which they were acting, and at the same time tendered them the premium therefor, but that P. J. Otey & Co. refused to deliver the policy or to give them the name of the company for which they were acting. From this it appears that the only evidence of the agreement to insure which the plaintiff could file is the correspondence between J. B. Moore & Co. and P. J. Otey & Co., which correspondence constitutes the agreement to insure, relied on by the plaintiff in this suit. The defendant demands that the plaintiff shall file with his bill, as part thereof, in order to maintain this suit, the contract of insurance, which is the policy itself. If he were able to do this, there would be no necessity of this suit, the object of which is to compel the defendant to carry out its agreement to insure by executing the policy of insurance contracted for.
“The demurrer is overruled.”
The defendant filed its answer, not admitting any of the allegations of the bill relating to the negotiations charged to have taken place between J. B. Moore & Co., representing the Franklin Brass 'Company, and P. J. Otey & Co., as agents for the insurance companies, and demanding full and proper proof of the same. It denied that any such contract as was set forth in the bill was ever made, and claimed that the negotiations referred to therein were not consummated, and that they never grew into a binding contract between the parties, and insisted that it was well understood between the parties that the correspondence and negotiations mentioned should not be considered as a contract un *341 til the entire matter, in form and substance, had been submitted to and approved by the insurance company. Defendant also denied that the plaintiff had lately theretofore become informed that it was the Phenix Insurance Company of Brooklyn for which P. J. Otey & Co. acted and spoke in the telegram of September 3r 1891, and it alleged in its answer that the Franklin Brass Company was fully advised on that subject in September, 1892, and that the delay in bringing the suit was without excuse. To this answer the plaintiff filed the usual replication, and the proofs were duly taken. The testimony of quite a number of witnesses was taken, and all the correspondence, both letters and telegrams, between the insurance agents, relating to the transactions concerning the insurance in controversy, was produced, as were also copies of the policies of insurance first issued, and of the amended “forms,” as subsequently prepared for the then proposed insurance. Before the case came on to be heard, the plaintiff filed exceptions to the defendant’s answer, which the court overruled, but, as this action of the court is not now before us for review, the same will not be further referred to, and is mentioned only as a proper statement of the history of the case. The defendant then moved the court for permission to file an amended answer, offering in support of the same the affidavit of one of its counsel; but the court, on consideration of the matters involved, overruled that motion, and this action is assigned as error by the appellant, but it will not be necessary to again refer to it, as the conclusion we reach disposes of the case on other grounds also raised by the appellant. The case was then heard on the bill, answer, replication, and testimony, and the court entered a decree directing that the defendant pay to the complainant the sum of $10,000, with interest thereon from the 4th day of September, 1891, until paid, with the costs of "this suit, less the sum of $90, as of the 3d day of September, 1891. From this decree the appeal we are now to dispose of was allowed.
The contract as relied upon by the plaintiff is claimed to have been made—to have been in fact the result of the letters and telegrams passing—between J. B. Moore & Co., representing the Franklin Brass Company, and P. J. Otey & Co., agents for the defendant; and the object of the suit is to enforce by the decree of the court the contract of insurance so entered into, or, in other words, for the specific performance of the same. The circumstances under which the insurance was originally effected, the reasons why the companies first issuing policies were dissatisfied and recalled them, have already been in substance fully set forth, about which there is no contention. The second effort then was to obtain policies free from the objectionable forms and the blanket provisions of those that had been condemned by the insurance companies. Much of the correspondence between the parties had no direct bearing on the real question at issue, and it was only offered for the purpose of placing fully before the court all the facts bearing upon the insurance of the property,—those relating to the canceled policies as well as those desired,—and as tending. *342 to explain the language used in some of the letters and telegrams, as also in the forms of policies proposed. The main contention between the agents appears to have been as to the “form,” which, the testimony shows, has no reference to the printed conditions on the policies, but only to the written part, which sets forth the property insured, its location, and the divisions of insurance on each item. It is also shown that a “specific form” of policy is one that covers a separate amount on each building, and a separate amount on the contents of each building, and that a blanket form of policy covers more than one building under one item of the policy, or a building and its contents, or the contents of more than one building. The first policies were objected to because the form was not specific, because it was in fact blanket in character. Keeping all this in view will enable us to properly understand the language used in the letters and the telegrams, from which it is said that the contract results.
After considerable correspondence between the agents of the parties hereto, in which all of the matters relating to the proposed insurance, and especially the forms of the policies, had been disclosed, P. J. Otey & Go., on the 3d day of September, 1891, sent to J. B. Moore & Go. this message by wire, viz.: <cWith specific form, can write ten' thousand at ninety cents, if it will help you.” The reply to this was by letter of the same date, deposited in the mail at Richmond, and directed to P. J. Otey & Co., at Lynch-burg. In this letter, J. B. Moore & Go., after referring to other matters connected with the application for insurance, used this language, viz.: “We also have your telegram that you can place 10,000 at 90c., and trust that you will do so, as we would like to get it as low as possible.” This, the plaintiff below claims, is the offer to insure, made by the defendant, through its agents, which was accepted by the plaintiff's agent on the same day. Does the evidence support this contention of plaintiff that a contract of insurance was consummated by the writing and mailing of the letter of September 3, 1891? It is insisted that when J. B. Moore & Co. deposited their letter in the post office at Richmond, on the 3d of September, eo instanti the contract was consummated, and could not afterwards be changed or repudiated by either P. J. Otey & Co. or by the company they represented. Where a contract is sought to be established by letters or telegrams, it must appear from the direct terms of the same that both sides have agreed to one and the same set of propositions. If any new matter is introduced into the answer, or anything is left by the offer to further determination, no contract has been entered into. If the reply does not in every particular comply with the offer, it will not make a contract. 1 Chit. Cont. (11th Am. Ed.) 15; 1 Pars. Cont. (6th Ed.) 476; Edichal Bullion Co. v. Columbia Gold Min. Co., 87 Va. 651, 13 S. E. 100; Minneapolis & St. L. Ry. Co. v. Columbus Rolling-Mill Co., 119 U. S. 149, 7 Sup. Ct. 168; Springs Co. v. Harrison (Va.) 25 S. E. 888; Goulding v. Hammond, 4 C. C. A. 533, 54 Fed. 639. If, by the telegram of September 3d, P. J. Otey & Go. did not reserve the right to determine whether or not the “specific form” was *343 such as had been required by the previous correspondence, then the claims of the appellee that the contract was closed when the letter of J. B. Moore & Co. of that date was deposited in the Richmond post office must be conceded. In such cases the authorities almost uniformly hold that the acceptance dates from the posting of the letter or the sending of the telegram. Adams v. Lindsell, 1 Barn. & Aid. 681; Duncan v. Topham, 8 C. B. 225; Tayloe v. Insurance Co., 9 How. 390; Trevor v. Wood, 36 N. Y. 307; Sanders v. Fruit Co., 144 N. Y. 209, 39 N. E. 75; Hunt v. Higman (Iowa) 30 N. W. 769; Yonge v. Society, 30 Fed. 902.
In the light of the correspondence and the special objections that had theretofore been raised as to the “form” in the policies, we are unable to hold that it was the intention of the agents of the defendant, in sending the telegram mentioned, for the first time in the history of the negotiations concerning the insurance, to transfer absolutely to the judgment of the agents of the party asking for insurance both the character and the sufficiency of the one matter that had caused, down to that time, the refusal of the defendant to perfect the insurance requested. We find nothing in the record to justify this contention. The letter of J. B. Moore & Co., by which it was insisted that the contract was consummated, does not sustain the position taken by appellee. While it inclosed the “form,” the writers were not confident that it would satisfy the companies, but they trusted that it would be specific enough. They evidently recognized that P. J. Otey & Co. had the right to pa$s upon the question of the specific character of the forms they were inclosing them, and they knew that, if said agents of the defendant did not approve of the same, the insurance would not be perfected. We gather from the evidence that such was the understanding of all the parties concerned, and, independent of that, we think the offer contained in the telegram was one that reserved to the sender thereof the right to take further action after a reply had been received. That the forms inclosed in the letter of September 3d were not “specific,” in the sense that that word is used by insurance men, is conclusively shown by the testimony, and is apparent from the correspondence had between the parties; and that such forms were not of the character indicated by the letters of J. B. Moore & Co., especially their letter of September 1st, is so evident as not to admit of question. . The claim that such forms were in accordance with the understanding of the parties, and of the kind called for in the telegram of the 3d September, is negatived by the letter of the agents of the Franklin Brass Company, dated September 1st, as well as by other portions of the correspondence, and is based only on a violent presumption. It would be most inequitable to hold that J. B. Moore & Co., by inclosing such forms, could bind the defendant to a contract that was proffered by its agent contingent upon the furnishing of a specific form by the party desiring insurance. Holding, as we do, that P. J. Otey &. Co. reserved the right to pass upon the sufficiency of the specific form called for in the telegrams, it follows that the posting of the letter at Richmond did not operate *344 to consummate the contract. If the telegram had read, “Form is specific and satisfactory; will write ten thousand at ninety cents,” then, we think, the letter would have closed the contract, unless there was the further understanding between the parties that the matter was to be submitted to the final decision of the defendant company, at its home office. On that point we do not find it necessary to pass, in view of the conclusion we have reached that there was no contract of insurance to submit to the defendant-for, as P. J. Otey & Co. reserved the right to pass upon the form of the policy, and as they did not receive the letter containing it until after the property had been destroyed, they refused to further. consider the same. The fire occurred during the afternoon of the 4th, and the letter was received by them on the evening of that day. Had the offer made in the telegram been such that the contract could have been consummated by mailing a letter at Richmond, then it would have been immaterial when the letter was received, or whether it was ever received; nor would it have been material when the fire occurred, if within the time covered by the policy. That the minds of the contracting parties had not reached an agreement when the fire took place is shown, not only by the communications passing between them immediately thereafter, but also by the deposition taken and filed in this cause. Therefore no contract of insurance existed as between the Franklin Brass Company and the defendant at the time the property was burned, as the parties had not agreed upon all the essential terms necessary to complete the same. At that time an important element of the contract, about which there had been much controversy, was still open and undetermined.
We do not consider and dispose of other questions raised by the assignments of error, and discussed by counsel, finding it unnecessary, as, in any event, for the reasons already set forth, the decree appealed from must be set aside. It is therefore ordered that said decree be reversed, and that this case be remanded-, with instructions to dismiss the bill.
Reversed.