## McNICOL v. NEW YORK LIFE INS. CO.

(Circuit Court of Appeals, Eighth Circuit    November 16, 1906.)

### No. 2,369.

**1. INSURANCE—LIFE INSURANCE—CONTRACT—EXECUTION.**

Deceased applied for insurance in defendant company, and in order to get a reduction in premium requested informally that his application be dated back. At the time of making the application he paid the local agent the premium for the first year, taking a receipt providing that the premium should be returned in case the application should not be accepted. Defendant elected not to accept the application, unless the applicant amended it, formally requesting that the insurance should take effect as of the prior date, and consenting to certain other conditions,

and for this purpose submitted an amended application, with a policy based thereon, which was sent to its local agent with instructions not to deliver until the applicant signed the amended application and paid certain interest on the first premium. The agent wrote the applicant that the policy had arrived "straight as a string" and that he hoped to deliver the same the following Sunday, but insured died before that time without having received the policy, signed the amended application, or paid the additional premium. *Held*, there was no acceptance by deceased of the insurance company's counter proposition, contained in the amended application, sufficient to constitute a contract of insurance.

2. SAME—RECEIPT OF PREMIUM.

The receipt of a first year's premium from an applicant for life insurance, with the qualification that it was conditional on the acceptance by the insurer of the applicant's proposition for insurance as made in his application, and, if the proposition was not accepted, the money should be returned, did not constitute a contract of insurance.

3. SAME—ESTOPPEL.

Defendant insurance company rejected an application for insurance as made, but filled out an amended application and the policy based thereon, and sent the same to its local agent, with instructions not to deliver the policy until insured had signed the amended application and paid the necessary additional premium. The agent wrote the applicant that he had received the policy "straight as a string" and hoped to deliver the same the following Sunday, but the applicant died before signing the amended application or obtaining the policy. *Held*, that the insurance company was not estopped by the letter of the local agent to deny that it had not accepted the applicant's original proposition.

In Error to the Circuit Court of the United States for the District of Kansas.

On December 14, 1903, one McNicol, of Wichita, Kan., made an application to defendant company for a policy of $5,000 on his life, payable at his death to his son, William D. McNicol, the plaintiff in this action. The applicant was born May 8, 1863, and his age on December 14, 1903, for insurance purposes as determined by his nearest birthday, was 41 years; but, to get a reduction in premium corresponding to a year's less age, he requested informally in his application that his policy be dated back to November 7th, which, if done, would secure for him the benefit of. a premium based on the age of 40, instead of 41, years. At the time of making the application he paid the local agent of defendant company at Wichita, in a manner satisfactory to him, the premium for the first year, taking a receipt therefor, with a proviso that, if the policy should not be issued by the company on his application, the amount of the payment should be returned to him by the agent. Pursuant to the usual practice, and as contemplated by him, his application was forwarded to the home office of the company in New York for its approval and acceptance. In due time the company determined that it would not accept the application or issue a policy on it, unless the applicant would make a certain amendment to it, formally requesting that the insurance should take effect as of November 7, 1903, instead of December 14, 1903, the date of the application, and agreeing that the accumulation period and the loan and nonforfeiting provisions of the policy should all relate back to November 7th. The company, finding the medical examination accompanying the application satisfactory, caused a policy of $5,000 to be prepared and executed in general conformity to the application, but attached to it a formal amendment of the application, conforming to its requirement as just stated, and returned them both to its local agent with instructions not to deliver the policy to the applicant until the amendment should be signed by the applicant and until he should pay the sum of $1.10 additional premium; the same being interest at the rate of 5 per cent. per annum on the amount of the first annual premium from November 7th, when the policy was to become effective and when the premium was due, to December 14th, when the application was made for the policy and when the premium was actually

paid. The local agent received the executed policy and the proposed amendment on January 7, 1904, and on that date wrote McNicol, who lived some distance away, that the policy had arrived "straight as a string" and that he hoped to place it in his hands the following Sunday. When McNicol received this letter on Friday, January 8th, he was sick, and, without any change in the facts of the case from those already stated, he died on the morning of Saturday, January 9th, without having received the policy or paid the additional premium or signed the amendment to his application. The beneficiary instituted suit on the policy in the Circuit Court. The court made a special finding of facts, in substance as just stated, and rendered a judgment in favor of the defendant. We are asked to reverse that judgment on this writ of error.

Earl Blake (W. A. Ayres and B. F. Milton, on the brief), for plaintiff in error.

S. B. Amidon and James H. McIntosh, for defendant in error.

Before VAN DEVANTER and ADAMS, Circuit Judges, and PHILIPS, District Judge.

ADAMS, Circuit Judge, after stating the facts as above, delivered the opinion of the court. The only question in this case is whether the facts as found support the judgment as rendered. The application made for the insurance was a proposition requiring acceptance as made before it became a contract. Travis v. Insurance Co., 43 C. C. A. 653, 104 Fed. 486. This McNicol, not only presumptively, but actually, knew. The receipt taken by him from the local agent when he paid the first year's premium informed him in effect that the payment was only provisionally received, that his application might not be accepted by the company, and, if it should not be accepted, that the agent would return the amount of the payment to him. The facts conclusively show that the application was not accepted. An amended application was prepared by the company, embodying several material modifications or additions to the one made by McNicol, and the same was forwarded to its local agent for submission to the applicant for his consideration and signature if satisfactory. This amounted to a rejection of the proposition as made by McNicol and a counter proposition by the company to him, which could not become a contract until it was accepted by him. Mutual Life Ins. Co. v. Young, 23 Wall. 85, 23 L. Ed. 152; Minneapolis, &c., Ry. Co. v. Mill, 119 U. S. 149, 7 Sup. Ct. 168, 30 L. Ed. 376. This McNicol never did. He unfortunately died before the counter proposition reached him. The minds of the parties never met and no contract was ever concluded between them.

Plaintiff's counsel contend that, as the policy was actually made out as called for in the original application and delivered to the local agent of the company for the applicant, it thereby became a binding contract. If such were the only facts of the case, their contention might be right; but, as already seen, the record contains much more. The proposition as made in the original application was rejected by the company, and a counter proposition made for the consideration of the applicant. The physical making out and sending of the policy to the local agent in themselves constituted no contract. By special direction of the company they were not to be treated as a delivery of the policy. It was not to be delivered until McNicol complied with the terms and conditions specified in the counter proposition.

It is next urged that, as defendant's agent received the first year's premium from the applicant, the company thereby insured him. This contention overlooks important facts of the case, and particularly the qualification attending the act of receiving the money. It was distinctly understood at the time that the receipt of the premium was conditional on the acceptance by the company of the applicant's proposition for insurance as made in his application. If the proposition should not be accepted, the money was to be returned; and that was the agreed limit and measure of the company's liability resulting from the receipt of the first year's premium, in case the policy was not issued.

It was argued orally, but not presented in brief of plaintiff's counsel, that the letter of the local agent, written to McNicol after he had received the policy with special instructions not to deliver it until McNicol paid a further premium and signed a new application, estopped the defendant from denying the consummation of the contract. The company or any of its general officers did not write the letter, and the local agent, as the facts of the case show and as McNicol well knew, had no authority to make a contract of insurance without the approval of the company, and a fortiori had no authority to conclude such a contract in express violation of his specific instructions from the company. Moreover, the letter, whether authorized or not, was not written with the intention that McNicol should regard it as an acceptance of his original proposition for insurance. It would have been gross bad faith on the part of the agent, in the light of his instructions, to attempt to convey any such intention. Not only so, but the language of the letter did not justify reliance upon it by McNicol as an acceptance of his original proposition. It informed him that the agent hoped to place the policy in his hands Sunday. Whether he would do so or not depended as a matter of fact upon whether McNicol would comply with the terms and conditions upon which alone he might deliver the policy or place it in his hands. The expression that the agent hoped to deliver it Sunday is suggestive of a doubt as to his ability to do so; and McNicol had no right to rely on the letter without recognizing the suggested doubt. Moreover, there is no showing that McNicol either refrained from acting or took any affirmative action upon the supposition that the letter concluded his contract with the company. It thus appears that several elements which necessarily enter into estoppel by conduct (Bigelow on Estoppel [5th Ed.] p. 26) are wanting in this case, and their absence effectually refutes the contention of counsel. The case, freed from the obscurities suggested by ingenious counsel is, in our opinion, clearly without merit. The fundamental requisite to the consummation of a contract, the aggregatio mentium, never existed. Before it could have been reached, according to the method of negotiation resorted to by the parties, one of them died, and this unfortunate fact put a stop to further negotiations which might or might not have resulted in a contract.

The judgment of the trial court was clearly for the right party, and is accordingly affirmed.