YOUNG'S MARKET CO. v. PIONEER PRODUCE CO.

(Circuit Court of Appeals, Eighth Circuit. December 6, 1911.)

No. 3,545.

SALES (§ 22*)—CONTRACT—OFFER AND ACCEPTANCE.

Defendant authorized a produce broker to sell "five cars storage packed eggs. Shipment prior April 16th." The broker sold the eggs as "fancy storage packed" for shipment April 15th, and required that they should be chilled at a fixed temperature never before mentioned; that the cars should be iced to their full capacity, whether necessary or not; and that the cases should be racked. *Held*, that the acceptance was not in the terms of the offer, and that there was no contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 39–43; Dec. Dig. § 22.*]

In Error to the Circuit Court of the United States for the District of Kansas.

Action by Young's Market Company against the Pioneer Produce Company. Judgment for defendant, and plaintiff brings error. Affirmed.

C. W. Wright (J. Mack Love, G. H. Buckman, and S. C. Bloss, on the brief), for plaintiff in error.

S. S. Smith, G. W. Hurd, and Arthur Hurd, for defendant in error.

Before HOOK and SMITH, Circuit Judges, and MARSHALL, District Judge.

SMITH, Circuit Judge. The plaintiff is engaged in the general produce business at Los Angeles, Cal., and the defendant is engaged in the same business at Abilene, Kan. C. T. Wells is a produce broker at Los Angeles. The petition is in two counts. In the first it is sought to recover damages for failure to deliver five cars of eggs which it is claimed defendant contracted to sell plaintiff. The second count is for commissions on said sale alleged to have been earned by said C. T. Wells, the claim for which has been assigned to plaintiff. A demurrer was filed to the petition and sustained, and plaintiff elected to stand on its petition, refused to plead over, and thereupon its action was dismissed, and the plaintiff has brought the case here on error. There is but one question in the case, and that is whether the correspondence which passed between the parties named constituted a contract between plaintiff and defendant. The correspondence is as follows:

Telegram.

"Abilene, Kansas, Mar. 16th, 1909.

"C. T. Wells, Los Angeles, Calif. Offer five cars storage packed eggs. Shipment prior April sixteenth, five twenty five, track, Abilene, including brokerage.	Pioneer Produce Co."

Telegram.

"Los Angeles, Cal., March 17, 1909.

"Pioneer Produce Co., Abilene, Kansas. Sold Youngs Market two cars seventeen half, give option balance until two o'clock to-morrow, shipment before April fifteenth; fancy storage packed.	C. T. Wells."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Telegram.

"Los Angeles, Calif., 3/18/1909.

"Pioneer Produce Co., Abilene, Kansas.   Young's Market Company took the other three cars at five twenty-five, making the five offered your wire, sixteenth, conditions same to govern.   What price five more, shipment before April 15th, including brokerage.                          C. T. Wells."

Letter.

"No. 433 South Main Street,

"Los Angeles, Calif., March 22nd, 1909.

"The Pioneer Produce Company, Abilene, Kansas—Gentlemen: The five cars of eggs which I sold to the Young's Market Company of this city at $5.25, track Abilene, are to be fancy storage packed and to be shipped prior to April 15th.   It is understood that these eggs are to be chilled at a temperature between 36 and 40 before being loaded into refrigerator cars, which are to be iced to full capacity, and also racked.   If the weather is not too warm the consignee does not think it will be necessary to have cars re-iced in transit, as they will come via Santa Fé, and if properly iced by you that they should come through in good condition.   Draw draft, billing attached. The re-icing charge in transit has been raised and is very expensive, and these people want to avoid this charge if they possibly can, without interfering with the quality of the eggs.   They are heavy handlers of Kansas eggs, and no doubt will use several cars of your stock during the season.   I have represented that your eggs were being one of the best packed in Kansas, and coming from the northern section they should show up mighty fine.   These are the five cars offered your wire 16th, accepted in my wires 17th and 18th.

"Yours very truly.                  C. T. Wells, for Pioneer Produce Co.

"Accepted: Young's Market Company, by P. M. Young."

Letter.

"Abilene, Kansas, March 27th, 1909.

"C. T. Wells, Los Angeles, Cal.—Dear Sir: Yours of the 22nd to hand and contents carefully noted.   In regard to the eggs we offered you, we notice that you made it a point in your wire and letter always to make them read fancy storage packed.   Now we never quoted fancy storage packed eggs, we aim to make a good storage pack, but we realize that when we quote fancy storage packed eggs, it gives the party at the other end all kinds of a chance to kick out, and this makes us slow to confirm this sale, if you have offered him a fancy storage pack we only agree to put up good, ordinary packed eggs.   Hoping you will write us more fully as to what Young's Market will expect, we are

"Yours respectfully,          Pioneer Produce Co., per J. S. Engle."

Telegr

"Los Angeles, Cal., March 31st, 1909.

"J. S. Engle, c/o Pioneer Produce Co., Abilene, Kansas.   Yours twenty-seventh, Young's expect storage packed eggs sight draft lading attached, pay upon presentation.   What price two cars, current receipts, wire.

"C. T. Wells."

This is all the correspondence relied on, and does not show any contract between the parties.   The defendant authorized the broker, Wells, who was agent of both parties to offer five cars of eggs.   The eggs were to be storage packed and to be shipped before April 16th. The telegraphic acceptance was of the same number of cars of fancy storage packed eggs, shipment to be made before April 15th.   It is manifest that this was no acceptance at all.   One who is offered storage packed eggs cannot accept by an offer to take fancy storage packed eggs.   It is not an acceptance no matter what words may be other-

wise used if one receive an offer to sell merchandise to be shipped if he changes the date of shipment. If he could change it one day he could change it any number of days. There had, therefore, been no acceptance of defendant's offer when Wells wrote the letter of March 22d in which, in addition to demanding that the eggs should be fancy storage packed instead of storage packed, and that they should be shipped one day sooner than offered, he further required that the eggs must before shipment be chilled to a temperature between 36 and 40 before loading, that the cars should be iced to their full capacity, and that the cases of eggs be racked. Thus five separate and distinct things were required to be stipulated not contained in defendant's offer, namely: First, that the eggs should be fancy storage packed instead of storage packed; second, that they should be shipped before April 15th instead of before April 16th; third, that they should be chilled at a fixed temperature never before mentioned; fourth, that the cars be iced to their full capacity whether necessary or not; and, fifth, that the cases be racked.

Manifestly the parties were far from agreeing at that time. Defendant wrote specially calling attention to the difference between storage packed and fancy storage packed, and requesting Wells to write more fully what Young's Market would expect, but did not say whether they would acquiesce in the other changes proposed in the offer. Then Wells did not write but telegraphed "Young's expect storage packed eggs." True, this was the language of the original offer, but in the meantime, the offer not having been accepted, the defendant had changed the offer to "good, ordinary packed eggs" as distinguished from fancy packed eggs and then plaintiff sought to accept in the terms of the original offer but that offer had been changed by defendant as it had a perfect right to do before acceptance. No attempt was made by plaintiff to arrive at any adjustment as to the other four proposed modifications of the offer.

If there was a contract, what was it? Were shipments to be good, ordinary packed eggs or some other kind? Were they to be shipped before April 15th or before April 16th? Were they to be chilled at a temperature between 36 and 40 or not? Were the cars to be iced to their full capacity whether necessary or not? Were the cases to be racked or not?

The answer to all of these questions is that no one can tell. If that be true the correspondence does not show a contract by offer and acceptance, and does not show that there was any definite meeting of the minds of the parties. The Circuit Court was right in sustaining the demurrer to the petition. Minneapolis & St. Louis Railway Co. v. Columbus Rolling Mill, 119 U. S. 149, 7 Sup. Ct. 168, 30 L. Ed. 376; Compania Bilbaina v. Spanish-American Co., 146 U. S. 483, 13 Sup. Ct. 143, 36 L. Ed. 1054; James v. Darby, 100 Fed. 224, 40 C. C. A. 341; McNicol v. New York Life Ins. Co., 149 Fed. 141, 79 C. C. A. 11; Baird v. Pratt, 148 Fed. 825, 78 C. C. A. 515, 10 L. R. A. (N. S.) 1116; Starr & Co. v. Galgate Ship Co., 68 Fed. 234, 15 C. C. A. 366; Phenix Ins. Co. v. Schultz, 80 Fed. 337, 25 C. C. A. 453. A quite similar case to this is Brophy v. Idaho Produce & Provision

Co., 31 Mont. 279, 78 Pac. 493, which held that a proposition to sell 10 cars of nice white potatoes, Peerless stock, is not accepted by an order for 10 cars of choice potatoes.

The judgment is affirmed.