## COLUMBIA MALTING CO. v. CLAUSEN-FLANAGAN CORPORATION.

(Circuit Court of Appeals, Second Circuit. November 3, 1924.)

No. 23.

**1. Contracts ☞23—Acceptance must not change, add to, or qualify terms of offer.**

An acceptance must be unequivocal, and must not change, add to, or qualify the terms of the offer, but new words added thereto will not impair or prevent acceptance if they do not in legal effect qualify offer.

**2. Sales ☞22(4)—New stipulation as to quality invalidates acceptance.**

Reply to offer making new stipulations as to quality invalidates acceptance.

**3. Contracts ☞20—Failure to accept offer constitutes rejection.**

One who does not accept offer necessarily rejects it.

**4. Contracts ☞24—Introduction of new term into offer constitutes counter proposal.**

One who introduces a new term into the offer in effect offers a counter proposal.

**5. Sales ☞22(4)—Buyer's acceptance of offer after qualifying terms thereof held not to create contract.**

Where buyer, on acceptance of offer for sale of "standard malt" submitted by seller, added the words "of choice brewing quality," and added the words "and inspection" to the words "Terms: net cash on arrival of each car," there was no contract, especially in view of custom of trade treating "standard" malt and "choice" malt as malt of different grades.

**6. Sales ☞22(4)—Seller's letter on buyer's qualification of offer in acceptance thereof held not to constitute acceptance of counter proposal.**

Where buyer in acceptance of offer for sale of "standard malt" qualified contract to provide for "choice brewing quality," seller's letter, sent after receipt of qualified acceptance, stating that seller would deliver "first-class standard malt," *held* not an acceptance of the counter proposal, in view of custom of trade making "standard" malt and "choice" malt different grades.

**7. Sales ⬥⟹22(4)—Failure to reply to counter proposal not assent thereto.**

Failure to reply to counter proposal *held* not assent thereto.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Columbia Malting Company against the Clausen-Flanagan Corporation. Judgment for defendant, and plaintiff brings error. Affirmed.

The action was brought by the plaintiff to recover damages in the sum of $26,250 for the breach of an alleged contract under which it is claimed that the plaintiff agreed to sell and the defendant to purchase 25,000 bushels of malt. The answer put in issue the making of the contract. By stipulation of the parties entered in open court the case was tried by a jury of one. The judgment was entered upon a verdict directed by the court at the close of plaintiff's case. It recites that defendant made a motion for the direction of a verdict. An examination of the stenographer's minutes as found in the transcript does not disclose that such a motion was made. It discloses that defendant moved that the complaint be dismissed, and that the court failed to decide the motion, and, instead of doing so, and after argument on it, on its own motion directed a verdict for defendant.

Barker, Donahue, Anderson & Wylie, of New York City (Ira L. Anderson and Eugene R. Pennock, both of New York City, of counsel), for plaintiff in error.

Meyer Britwitz, of New York City (Joseph I. Green, of New York City, of counsel), for defendant in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The question presented is whether the contract sued upon amounted in law to a contract. The defendant claims that it did not because there was no meeting of the minds. The court below took the same view, and held that there was no real mutual assent between the parties.

The "contract" upon which the suit was brought reads as follows:

"The Columbia Malting Company, Chicago, Illinois.

"Malt contract between Clausen-Flanagan Brewery of New York, N. Y., the buyer, and the Columbia Malting Company, of Chicago, Ill., the seller.

"Date: May 3, 1920.

"Quantity: Twenty-five thousand (25,000) bushels.

"Grade: Our standard malt *of choice brewing quality.*

"Price: One dollar and seventy cents ($1.70) per screened bushel of 34 lbs., f. o. b. at New York, N. Y.

"Terms: Net cash on arrival of each car, *and inspection.*

"Shipments: Malt to be shipped in bags in gradual monthly shipments, between November 1, 1920, and May 1, 1921.

"Malt bags are the property of seller, and are to be returned promptly by the buyer.

"Shipping as directed.

"Directions: Pier 66, North River, N. Y. C.

"Caution: No verbal condition or modification of this contract is valid. This contract must be ratified from the office of the Columbia Malting Company, at Chicago, Ill. The Columbia Malting Company, the Seller, by Henderson D. Graff, Secy.

"Accept: The foregoing contract is hereby accepted. Clausen-Flanagan Company, the Buyer, by P. G. Tighe."

There was attached to the above a letter of the same date written by the plaintiff and addressed to the defendant, and which was incorporated into and made a part of the agreement, but which it is unnecessary to set forth herein.

The "contract" as above reproduced was signed in Chicago by the plaintiff, but did not then contain the italicized words *"of choice brewing quality,"* or the words *"and inspection,"* which now appear in it. As originally drawn with those words not contained in it and with the signature of the plaintiff appended to it, it was forwarded to the defendant at New York City for its acceptance. On its receipt by defendant the italicized words were added to the instrument by defendant, and the following was appended thereto:

"Acceptance: The foregoing contract is hereby accepted. [Signed] Clausen-Flanagan Brewery, the Buyer, by [signed] P. G. Tighe."

It is conceded that P. G. Tighe was the defendant's treasurer and that he had authority to bind the defendant by contract.

The instrument having been changed and, as changed, signed by defendant, it was then forwarded to the plaintiff in Chicago, and upon its receipt by the plaintiff it sent the following letter to the defendant in New York:

"Clausen-Flanagan Brewery, New York, N. Y.—Gentlemen: We have letter from our Mr. Blum today inclosing your contract dated May 3 properly signed by you.

"We note the addition made in reference to the grade of malt to be shipped and that you have added the words 'of choice brewing quality.' This is all right, as no doubt you mean that we undertake (to) deliver you a first-class standard malt. We have therefore entered the contract accordingly and await your further commands. Yours very truly, The Columbia Malting Company, ———, Secy."

The alleged contract bears date of May 3, 1920, and it provided that shipments were to be made in gradual monthly shipments between November 1, 1920, and May 1, 1921, and the price to be paid was $1.70 per screened bushel, f. o. b. New York. The record discloses that the reasonable market value of standard brewing malt, "f. o. b. New York," was stipulated between the attorneys for the parties. The stipulation shows that the price of such malt was declining steadily. On November 1st the price of standard malt had fallen to $1.15½ per bushel, and it continued to decline, and on April 28th it had fallen to 86½ cents.

After the letter of May 8, 1920, set forth above, and to which the defendant made no reply, the plaintiff on November 17, 1920, addressed a letter to the defendant, in which it said:

"Referring to your contract with us dated May 3, 1920, we beg to advise that we are now ready to make shipments on same and await your shipping commands. * * *"

To this letter the defendant replied on December 2, 1920, as follows:

"Referring to your letter of November 17, 1920, we can do no more than to repeat, at this time, that there is no contract in existence between us, nor did we ever recognize such a contract, and we do not therefore send you shipping instructions."

At that time the price of malt had declined to $1.03½ which was 66½ cents a bushel less than the contract price. As the contract, if there was a contract, called for 25,000 bushels, the difference between the contract price and the selling price on the day the letter was written amounted to about $17,000. And, prior to May 1, 1921, the price continued to decline, and on April 28, 1920, the difference between the price contracted for and the selling price was over $20,000.

It thus appears that the proposal which the plaintiff submitted to the defendant was not accepted by the latter in the form submitted, but was altered by the defendant by the addition of certain words. The specification as to grade as proposed read, "Our standard malt." This the defendant changed to read, "Our standard malt *of choice brewing quality.*" And the specification of Terms proposed read, "Net cash on arrival of each car." This the defendant changed to read, "Net cash on arrival of each car, *and inspection.*"

[1, 2] The question is whether this amounted to an acceptance of the plaintiff's offer. It is elementary that an acceptance must be unequivocal. It must not change, add to, or qualify the terms of the offer. A reply to an offer which makes new stipulations as to quality invalidates an acceptance. National Bank v. Hall, 101 U. S. 43, 50, 25 L. Ed. 822; Bank of Buchanan County v. Continental National Bank of Los Angeles (C. C. A.) 277 F. 385, 390; Neer v. Lang, 252 F. 575, 576, 164 C. C. A. 491; Young's Market Co. v. Pioneer Produce Co., 192 F. 822, 113 C. C. A. 146; Williston on Contracts, vol. 1, p. 136, and cases there cited.

[3, 4] One to whom an offer is made must either accept it or reject it. And if he does not accept it he necessarily rejects it. If he introduces a new term into the offer, he in effect offers a counter proposal. Poel v. Brunswick-Balke-Collender Co., 216 N. Y. 310, 110 N. E. 619; 9 Cyc. 267.

And it is equally well settled that, although the party to whom the offer is addressed adds new words to the proposal, the words added will not impair or prevent acceptance if they do not qualify in legal effect the offer. The added words in such cases do not prevent a binding contract from being formed. Bennett v. Cummings, 73 Kan. 647, 85 P. 755; Curtis Land & Loan Co. v. Interior Land Co., 137 Wis. 341, 118 N. W. 853, 129 Am. St. Rep. 1068.

[5] This makes it necessary to consider the effect of the added words. The proof shows that the trade generally sells malt in three different grades, "standard," "choice," and "fancy," and that these grades are distinguished by the percentage of diastase which is used in brewing. "Standard" malt contains between 68 and 72 per cent. of diastase. "Choice" contains between 72 and 74 per cent. "Fancy" contains between 74 and 77 per cent.

The "standard" is sold for a lower price than either of the other grades. It brings the lowest price and is the lowest grade of malt. The "choice" is the next higher grade,

and is sold for the next higher price. The "fancy" commands the highest price of them all. And malt "of choice brewing quality" brings a higher price than the "standard," because it yields more extract.

This proposal of the plaintiff, made under date of May 3, 1920, was sent by it to its agent in New York, who took it to the office of defendant and submitted it to one of its officials, who, it is admitted, had power to make contracts binding upon the defendant corporation. That official made the additions in the writing submitted and then signed the paper. At the time the additions were written in the plaintiff's agent told the agent of defendant that he could write in the additional words, and that he would submit the changed writing to the plaintiff "subject to approval from the Chicago office." The plaintiff's agent evidently thought the change was such as to require the plaintiff's approval, although at the trial he stated that he did not think the change involved a change in the grade of malt. He admitted, however, that the Chicago office on receipt of the changed writing wrote him a letter in which they said that they "noted the change in the grade of the malt."

The plaintiff's offer to sell to defendant "our standard malt" was an offer of malt having between 68 and 72 per cent. of diastase. And when the defendant added the words "of choice brewing quality" he changed the terms of the plaintiff's offer to make it include a malt containing between 72 and 74 per cent. of diastase. The change of the language in the offer as submitted modified the description of the malt to be delivered so as to require the delivery of a higher quality of malt for the same price at which the plaintiff proposed to furnish the inferior quality—which remained $1.70 per screened bushel of 34 pounds f. o. b. at New York." This was such a modification of the plaintiff's offer as amounted to a rejection by the defendant of the offer as submitted.

But this was not the only modification; for, as we have seen, the offer stated the terms as "net cash on arrival of each car." The defendant added the words "and inspection," making the terms to read: "Net cash on arrival of each car, and inspection." This also amounted to a modification of the terms of the offer which did not give defendant any opportunity of inspection, and which defendant would not have been entitled to except for the reservation. These additions made by the defendant to the terms of the plaintiff's

offer changed the legal effect of the offer and amounted to a rejection of it. They constituted a counter proposal.

It appears that in previous contracts between the parties for the purchase of malt in 1917 and in 1919 the terms specified that payment was to be made "net cash on arrival." And the defendant was not satisfied with the quality of the malt which it was receiving under these contracts and which it was paying for "on arrival" and without inspection. This appears from a letter of July 2, 1919, which read as follows:

"For some time past the malt received from the Columbia Malting Company has been very inferior in quality to that of the shipments on the earlier contracts, upon which, as you know, all purchases were based. No doubt the trouble is due to some error or misunderstanding in the shipping department, as we hesitate to believe it could be done with the knowledge and approval of the company.

"Kindly take the matter up, and oblige."

This would seem to account for the addition made requiring payment "on arrival of each car, *and inspection.*"

Assuming, as we do, that "our standard malt" and "our standard malt of choice brewing quality" do not mean the same thing, we are brought to a consideration of the letter of May 8, 1920, above set forth, and which plaintiff addressed to defendant on the receipt of the "contract" with the changes made in it by defendant. In the letter of May 8, 1920, the plaintiff, as heretofore said, after calling attention to the addition made, wrote: "This is all right, as no doubt you mean that we undertake to deliver you a first-class standard malt. We have therefore entered the contract accordingly and await your further commands."

[6] If, as we hold, the additions made by the defendant to the proposal under date of May 3, 1920, were not an acceptance but a counter proposal, the plaintiff's letter of May 8th to defendant cannot be regarded as an acceptance of the counter proposal. The defendant's proposal was for "standard malt of choice brewing quality," and in reply the plaintiff said: "We undertake (to) deliver you a first-class standard malt." The two things were different, and the plaintiff's letter was not an acceptance of the defendant's counter proposal, and could not constitute a contract, even though plaintiff stated in its letter, "We have therefore entered the contract accordingly," and the defendant failed to reply. In order that there may be a contract the parties must have a distinct inten-

tion common to both and without doubt or difference. Both parties must assent to the same thing in the same sense, and their minds must meet as to all the terms. The acceptance must be identical with the offer or there is no meeting of the minds. Detroit Copper & Brass Rolling Mills v. Wise (C. C. A.) 297 F. 460. In this case it is plain that the parties did not mean the same thing and their minds never met.

In Saco-Lowell Shops v. Clinton Mills Co. (C. C. A.) 277 F. 349, it was held that, where an offer to sell was returned to the seller, marked by the buyer as accepted, but containing material alterations interlined by the buyer, the offer was rejected, and no contract was consummated. And in the case under consideration it is quite immaterial that the plaintiff wrote the defendant that they had "entered the contract" and awaited their further commands.

The relation was not, in our opinion, changed by the fact that the defendant made no reply to the plaintiff's letter. The defendant's silence is not to be regarded as any assent upon its part. Silence is not assent, unless there is a duty to speak, and there was no such duty in this case. In Williston on Contracts, vol. 1, § 91, the rule is correctly laid down as follows:

"Generally speaking, an offeree has a right to make no reply to offers, and his silence and inaction cannot be construed as an assent to the offer."

[7] That writer goes on to say that, "even where there is no duty to speak, a line of argument which has not been formally stated in the cases may be advanced to indicate that mere silence, though unaccompanied by any act, may amount to an acceptance if the offeree requested that mode of indicating assent, and assent was intended by the offeree. When an offer is made to one who remains silent, the silence may be due to a variety of causes. It is clear that, whatever may have been the offeree's state of mind, no contract can be made unless the offer stated that the offerer would assume assent in case the offeree made no reply. But if the offer does so state, the offeree's silence is ambiguous, and may doubtless be shown not to have meant assent. Certainly the offeree has the right to keep silent if he chooses without thereby becoming charged with a contract. But it is at least possible that he did mean assent, if in fact this was his meaning, there is good reason for urging that a contract has been formed." We do not find in this case evidence showing that the defendant by its silence meant assent. And the

courts hold that, even though the offer states that silence will be taken as consent, silence on the part of the offeree cannot turn the offer into an agreement, as the offerer cannot prescribe conditions so as to turn silence into acceptance. In re Empire Assurance Corporation, L. R., 6 Ch., 266; Prescott v. Jones, 69 N. H. 305, 41 A. 352. In Bank of Buchanan County v. Continental National Bank of Los Angeles (C. C. A.) 277 F. 385, 390, it is said that "one to whom an offer is made is under no obligation to do or say anything concerning an offer which he does not accept." And in 13 Corpus Juris, 276, it is stated that "an offer made to another, either orally or in writing, cannot be turned into an agreement because the person to whom it is made or sent makes no reply, even though the offer states that silence will be taken as consent, for the offerer cannot prescribe conditions of rejection so as to turn silence on the part of the offeree into acceptance."

The parties had waived a jury, and agreed to leave any question of law or fact to the court. The record discloses that the only question involved was one of law based upon a construction of written evidence.

As the plaintiff's own proof showed that there was no contract between the parties, it was not error to direct a verdict for the defendant.

Judgment affirmed.